POWER AUTHORITY OF the STATE
OF NEW YORK, Plaintiff,

v.

DEPARTMENT OF ENVIRONMENTAL
CONSERVATION OF the STATE OF
NEW YORK, and James L. Biggane, as
Commissioner of the Department of En-
vironmental Conservation of the State
of New York, and Individually, Defend-
ants.

No. 74–CV–151.

United States District Court,
N. D. New York.

May 2, 1974.

Scott B. Lilly, Gen. Counsel & Atty., Power Authority of the State of New York, New York City, for plaintiff; John R. Davison, Associate Gen. Counsel, Francis X. Wallace, Sp. Counsel, Albany, N. Y., of counsel.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, Albany, N. Y., for defendants; Stanley Fishman, Olin Harper LeCompte, Asst. Attys. Gen., Howard A. Fromer, Deputy Asst. Atty. Gen., of counsel.

JAMES T. FOLEY, Chief Judge.

## MEMORANDUM-DECISION and ORDER

Plaintiff, the Power Authority of the State of New York (PASNY), seeks a mandatory injunction and declaratory and other relief against the Department of Environmental Conservation of the State of New York and its Commissioner, James L. Biggane, as Commissioner and individually. The defendant Department will be referred to herein as ENCON. Jurisdiction is asserted under 28 U.S.C. A. § 1337 and 28 U.S.C.A. § 1331(a).

PASNY proposes the construction of a dam and two reservoirs near Breakabeen, N. Y., on Schoharie Creek, in this district in connection with its "Breakabeen Pumped Storage Project." Its application for the necessary federal license has been pending before the Federal Power Commission (FPC) since March 30, 1973, as Project Number 2729, and the FPC has taken jurisdiction of this particular proceeding.

On August 15, 1973, more than eight months ago, PASNY applied to ENCON, pursuant to § 401(a)(1) of the Federal Water Pollution Control Act for a certificate that its discharge from the Breakabeen facility will comply with Sections 301, 302, 306 and 307 of the Act. See 33 U.S.C.A. § 1341.

The basis for the dispute now presented to this federal Court is that prior to issuance of the requested certificate, ENCON set in motion procedures by public notice to hold a public hearing on December 4, 1973, at Cobleskill, N.Y., stating the hearing would be held pursuant to § 401(a)(1) of the Federal Water Pollution Control Act Amendments of 1972 (FWPCAA) and Part 608.16 of 6 NYCRR. Plaintiff protested vigorously at this first hearing held on December 4,

1973, that the issues itemized for hearing purposes by an ENCON attorney would entail the discussion of ones outside the proper scope of the State's authority and would enter areas claimed to be preempted under the federal act for the jurisdiction solely of the Federal Power Commission (See Ex. B—Excerpt of Stenographic Record—Attached to complaint). In the face of this vigorous opposition, the Chief Hearing Officer postponed the hearing without date, and it is interesting to note that on that date, December 4, 1973, the representatives of PASNY at the hearing assured that prompt judicial clarification of the matter would be sought. (Ex. B—P. 33).

In a substantial decision dated March 22, 1974, Commissioner Biggane set forth in good legal form the analysis and interpretation of federal and state law and regulations that upheld jurisdiction and authority in ENCON to hold the hearings and directed the hearings to proceed. Pursuant to such direction, the Hearing Officer by determination dated March 26, 1974, denied the motion of the Power Authority and directed the hearing to commence on April 15, 1974.

The complaint for the relief previously described was filed in this Court on April 8, 1974 and process served. A temporary restraining order was issued by visiting Judge Charles L. Brieant, Jr. on April 9, 1974. Arguments were heard by me for the preliminary injunction on April 15, 1974. The TRO was continued with consent to April 29, 1974 when defendant's motion to dismiss the complaint was heard. At the time of hearing on April 29, 1974, the motion to dismiss, after being informed by ENCON that the hearing was noticed anew for May 6, 1974, I continued the TRO for good cause until this expedited decision could be handed down, hopefully, before that date.

There are then two motions before this Court: One for a preliminary injunction and the other to dismiss the action. Although defendants have requested an order from this Court extending the allowable one-year time to perform its certifying procedure [see 33 U.S.C.A. § 1341(a)], in my judgment such action is inconsistent with my finding of lack of jurisdiction hereinafter made and in light of this expedited decision such extension of time sought that may belong to the administrative power must be considered as unnecessary in this type of judicial determination.

Plaintiff was granted a temporary restraining order on April 9, 1974, to maintain the status quo pending full briefing, argument and research of the Federal Water Pollution Prevention and Control Act of 1948 (FWPCAA), amended 1972; 33 U.S.C.A. § 1251 et seq.

Defendants, while originally claiming a lack of subject matter jurisdiction, in later arguments and briefing concede subject matter and personal jurisdiction. However, despite the concession, for the reasons stated herein, this Court will not exercise jurisdiction over the alleged subject matter of this suit because, in my judgment after review and careful consideration, there are no questions to my mind which are ripe for adjudication under federal law at this threshold stage of State administrative hearings. Abbott Laboratories v. Gardner, 387 U.S. 136, 148–149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

■ The lack of any formalized final administrative action compels a federal court not to enter such a dispute in the embryonic stage. Indeed, aside from a tersely worded Notice for Hearing and one day of proceedings consisting chiefly of plaintiff's objection and recognition thereof by the ENCON Hearing Officer, no administrative action has been taken. The role has been accorded to each state by Congress to:

establish procedures for public notice in the case of all applications for certification by it and, to the extent it deems appropriate, procedures for public hearings in connection with specific applications.

33 U.S.C.A. § 1341.

Thus, unquestionably, the singular, yet significant, role of each state would not be allowed to follow its natural course

of the issuance of a certificate before being interrupted if the drastic injunctive relief sought were granted. Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 507–510, 63 S.Ct. 339, 87 L.Ed. 424 (1943); Luff v. Ryan, 128 F.Supp. 105, 109 (D.C.1955). There is an old and well settled principle fitting this dispute like a glove, I think, that it is inappropriate for a district court to adjudicate administrative matters before a decision has been "formalized"; in this case being for the State of New York to complete its important, yet singular, task in the federal licensing procedure, of issuing a certificate of compliance with certain state laws. Myers v. Bethlehem Shipping Corporation, 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938). As there is a need to protect the integrity of a court's process by minimizing interlocutory appeals, except in extraordinary cases, so it is necessary to afford at least this protection to a state administrative agency that is trying to act pursuant to a specific Congressional intent to increase state participation in solving the serious environmental problems we face. 1972 U.S. Code Congressional and Administrative News, pp. 3669–3677; FPC v. Louisiana Power & Light Company, 406 U.S. 621, 647, 92 S.Ct. 1827, 32 L.Ed.2d 369 (1972); Weinberger v. Bentex Pharmaceuticals, Inc., 412 U.S. 645, 652, 93 S.Ct. 2488, 37 L.Ed. 2d 235 (1973). The Supreme Court clearly drew this analogy in McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) when it explained this principle:

A primary purpose is, of course, the avoidance of premature interruption of the administrative process. The agency, like a trial court, is created for the purpose of applying a statute in the first instance. Accordingly, it is normally desirable to let the agency develop the necessary factual background upon which decisions should be based. And since agency decisions are frequently of a discretionary nature or frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise. And of course it is generally more efficient for the administrative process to go forward without interruption than it is to permit the parties to seek aid from the courts at various intermediate stages. The very same reasons lie behind judicial rules sharply limiting interlocutory appeals . . . .

Id., at 193–194, 89 S.Ct. at 1662–1663.

While the plaintiff steadfastly maintains that ENCON has no authority to hold any hearings, I find this position untenable in view of the clarity of both the statute and its legislative history. Plaintiff's real objection, it seems to me, boils down to the permissible scope of the hearings under federal and state law. See 33 U.S.C.A. § 1341. But if these hearings should go awry from what plaintiff considers relevant, its objection can be duly entered at that time and still afford the full protection in the ordinary course of judicial review thereafter. Pharmaceutical Manufacturers Association v. Gardiner, 259 F.Supp. 764, 765–766 (D.C.1966), aff'd 127 U.S.App. D.C. 103, 381 F.2d 271 (1967).

If delay were to be considered a significant factor facing plaintiff's cause, it must be considered that it was plaintiff's objection on December 4, 1973, the first and only day of hearings, which brought them to an abrupt halt. This objection was treated seriously and ruled upon by Commissioner James L. Biggane on March 22, 1974, in a decision that evidences careful consideration and sets forth persuasive reasons in support of the directive that authority existed to continue the hearing. There is no reason to believe from the presentation to me that plaintiff will not be accorded its rights and the opportunity to object to the procedures to preserve any questions of jurisdiction and scope for possible judicial review at the proper time.

Specifically, in terms of plaintiff's motion for a preliminary injunction, I find none of the required conditions are met for the granting of this extraordi-

nary remedy. Likelihood of success on the merits need not be depended upon greatly in view of the lack of ripeness on the merits. Additionally, plaintiff can hardly argue that the public interest is not better served by favoring public hearings on important questions as are involved in this case. Petroleum Exploration, Inc. v. Public Service Comm'n, 304 U.S. 209, 58 S.Ct. 834, 82 L.Ed. 1294 (1938); see Jaffe, The Administrative Agency and Environmental Control, 20 Buffalo Law Rev. 231, 236 (1970).

■■ But the most glaring deficiency which also further emphasizes the prematurity of this litigation is the absence of irreparable harm that can be perceived with any degree of reasonable certainty. Plaintiff contends that it will incur considerable cost for expenses in the nature of legal counsel and expert opinion in participating in these ENCON hearings. This contention seems dubious and speculative at best and hard to place in the area of precise money amounts. There is no recognized right for a statutory or corporate entity, a creature of the state, to be free from providing information or defending a public position it chooses to assert without sharing legal costs. Coca-Cola Company v. F. T. C., 475 F.2d 299, 304 (5th Cir. 1973), cert. den., 414 U.S. 877, 94 S.Ct. 121, 38 L.Ed. 2d 122 (1973); cf. Powelton Civic Home Own. Ass'n v. Department of H. & U. Dev., 284 F.Supp. 809, 840 (E.D.Pa. 1968); compare Public Utilities Comm'n of Ohio v. United Fuel Co., 317 U.S. 456, 469, 63 S.Ct. 369, 87 L.Ed. 396 (1943). Serious environmental considerations, in my judgment, were intended by Congress to be given full hearings so that the nation as well as the state will have the benefit of exploring all relevant conflicting interests. The money estimate of $250,000.00 that plaintiff estimates will be incurred for proper presentation of its position at the proposed hearing, from my experience, seems quite high. In any event, although the taxpayer's money is and should be a major concern, this amount may not be considered excessive when it is estimated we are dealing with a $100,000,000.00 project, originated by the plaintiff.

Once plaintiff admits that some hearings are proper, as it must, any estimate of money saved by *a priori* limiting the scope of the hearing, realizing the plaintiff's expenses are highly speculative and contingent upon its mode of presentation, is surely insignificant in terms of the irreparable harm needed to justify the extraordinary relief of an injunction.

The question of scope is for the reasonable men participating in this hearing to work out in the first instance. S. E. C. v. Brigadoon Scotch Dist. Co., 480 F.2d 1047, 1053 (2d Cir. 1973), review denied, 415 U.S. 915, 94 S.Ct. 1410, 39 L.Ed.2d 469; Bristol-Meyers Company v. F. T. C., 469 F.2d 1116, 1118 (2d Cir. 1972). It is as much in the State's interest as in plaintiff's to conduct an efficient hearing which is not unduly prolonged. The estimate of the defendants from past experience is that thirty days ordinarily suffices. I therefore find the issuance of any injunction inappropriate.

■ The issue of abstention has been raised but has not been advocated as an ultimate position of either party. Because it is my judgment that there are no issues ripe for decision prior to a hearing and final determination by the state agency, abstention would be "pointless". See Public Utilities Comm'n of Ohio v. United Fuel Gas Co., supra, 317 U.S. at 463, 63 S.Ct. 369 (1943); Mayor of Philadelphia v. Educational Equity League, 415 U.S. 605, 628, 94 S.Ct. 1323, 39 L.Ed. 2d 630 (1974); see also Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965).

■ . Thus, it is in the context that an injunction is inappropriate, and that abstention is pointless, that the Court turns to the motion to dismiss the action. Although it has not been raised by the parties, the most significant question is whether there is a "case" or "controversy" within the meaning of Article III, § 2 of the Constitution, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. The Supreme Court has very re-

cently held that the requirements of those sections are satisfied, and a case or controversy found to exist, when "the challenged governmental activity . . . is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties." Super Tire Engineering Company v. McCorkle, 416 U.S. 115, 94 S.Ct. 1694, 1698, 40 L.Ed.2d 1 (1974). While these factors may well be present in this case, I believe that a case or controversy does not presently exist and a declaratory judgment should not be issued because the "challenged governmental activity" is only the right of a state administrative agency to hold hearings on matters it believes to be in its jurisdiction.

■ A federal district court has jurisdiction to adjudicate a controversy, and the power to render a declaratory judgment under 28 U.S.C. § 2201, but the question of whether to entertain the action and grant relief is a matter within the discretion of the court. Brillhart v. Excess Ins. Co., 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942); PPG Industries, Inc. v. Continental Oil Company, 478 F.2d 674, 679 (5th Cir. 1973). The United States Supreme Court has emphasized that the declaratory judgment procedure is not to be used to preempt or prejudge issues that are committed to initial decision to an administrative body. Public Service Commission v. Wycoff Company, 344 U.S. 237, 246, 73 S.Ct. 236, 97 L.Ed. 291 (1952); see also State of California v. Oroville-Wyandotte Irrig. District, 409 F.2d 532, 535–536 (9th Cir. 1969). The Supreme Court was even more emphatic with regard to the use of the declaratory judgment procedure for proceedings pending before a *state* administrative agency:

> Anticipatory judgment by a federal court to frustrate action by a state agency is even less tolerable to our federalism. Is the declaration contemplated here to be *res judicata,* so that the Commission cannot hear evidence and decide any matter for itself?

If so, the federal court has virtually lifted the case out of the State Commission before it could be heard. If not, the federal judgment serves no useful purpose as a final determination of rights.

Public Service Commission, supra, 344 U.S. at 247, 73 S.Ct. at 242.

■ The Supreme Court noted that federal rights are protected by adequate review procedures in the federal courts. Thus, while the agency's decision as to its own jurisdiction is not the last word, "it must assuredly be the first." Federal Power Commission v. Louisiana Power & Light Company, supra, 406 U.S. 621, 647, 92 S.Ct. 1827, 1842, 32 L.Ed.2d 369. Mr. Justice Harlan's definition of the ripeness doctrine clearly fits this case:

> Without undertaking to survey the intricacies of the ripeness doctrine it is fair to say that its basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

Abbott Laboratories v. Gardner, supra, 387 U.S. 148–149, 87 S.Ct. 1515.

The Court therefore believes and repeats that this case is not ripe for adjudication. To my mind, and to be frank, the state courts of New York are a far more appropriate forum for the plaintiff to challenge the scope of the hearings on its two contentions of the immunity conferred by the New York State Legislature in the Power Authority Act, and the lack of authority conferred by the FWPCAA of 1972. See New York CPLR §§ 7801, 7803. I am conscious of the principle that federal courts must give due respect to a suitor's choice of a federal forum for hearing and decision of federal constitutional claims, even though the state courts have the same solemn responsibility as the federal courts.

Zwickler v. Koota, 389 U.S. 241, 248, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). But I firmly believe it should also be kept in mind that, as Justice Black said, we have had from the beginning two separate and independent legal systems that end up with the same right of ultimate review in the United States Supreme Court. Atlantic C.L.R. Co. v. Engineers, 398 U.S. 281, 286–287, 90 S. Ct. 1739, 1742–1743, 26 L.Ed.2d 234 (1970). The steady recourse to the federal courts for many problems, particularly on federal questions that the state courts could just as quickly and effectively process, has become a matter of serious concern. See Federal Jurisdiction: A General View, Judge Henry J. Friendly; see also Alberda v. Noel, 322 F.Supp. 1379, at 1384 (E.D.Mich.1971).

▮ I do not discount the arguments that there may be serious questions as to the relevancy and power of the defendants to attach conditions to the certificate pertaining to some of the areas in which they propose to inquire. It may be helpful, despite my disinclination to entertain jurisdiction for declaratory judgment and injunctive relief in regard to administrative hearings, to set forth some general observations and the results of legal research. The United States Supreme Court has stated, and the New York Court of Appeals has acknowledged, that Congress has vested in the Federal Power Commission practically exclusive jurisdiction over the regulation and licensing of hydroelectric power plants affecting the navigable waters of the United States. See First Iowa Coop. v. Power Comm., 328 U.S. 152 at pp. 167–169, 174, 181–182, 66 S.Ct. 906, 90 L.Ed. 1143 (1946); City of Tacoma v. Taxpayers, 357 U.S. 320, 334, 78 S.Ct. 1209, 2 L.Ed.2d 1345 (1958); Mtr. De Rham v. Diamond, 32 N.Y.2d 34, 343 N.Y.S.2d 84, 295 N.E.2d 763 (1973). This jurisdiction in the licensing or permit area of the Federal Power Commission can be modified by other federal legislation. Federal Power Commission v. Oregon, 349 U.S. 435, 446, 75 S.Ct. 832, 99 L.Ed. 1215 (1955). As the New York Court of Appeals recognized, this jurisdiction was in fact modified by Section 21(b) of the Federal Water Pollution Control Act of 1970. Mtr. De Rham, supra, 32 N.Y.2d at 44, 343 N.Y.S.2d 84, 295 N.E.2d 763. Section 21(b) was superseded, but without substantial changes, by Section 401 of the Federal Water Pollution Control Act Amendments of 1972. The legislative history indicates that Section 21(b) was amended to assure consistency with the change of emphasis from water quality standards to effluent limitations on the discharge of pollutants. Both the Senate and the House bills were similar in this respect. See 1972 U.S.Code Congressional and Admin.News at pp. 3735 and 3815. Section 401 requires that any applicant for a federal license or permit which may result in any discharge into navigable waters must provide a certificate from the originating state that such discharge complies with various sections of the Act. 33 U.S.C. § 1341. The states must establish procedures for public notice of all applications for certifications, and they may also, to the extent they deem appropriate, hold public hearings in connection with specific applications. Section 401(d), upon which the defendants place great reliance as a broad grant of authority to hold the hearing, requires that the certificate of the State set forth effluent and other limitations, and monitoring requirements, so as to assure that the applicant will comply with various sections of the Act, "and with any other appropriate requirement of State law set forth in such certification." 33 U.S.C. § 1341(d). Therefore, the Congressional intent is clear that the states retain the right to set more restrictive standards than those imposed by the Act. See 33 U.S.C. § 1370; 1972 U.S.Code Cong. and Admin.News at pp. 3751, 3825.

This legislative history and these statutory provisions noted unquestionably establish the right of hearing by the State in a situation of this kind to the extent it deems appropriate and also for the purpose of attaching necessary con-

ditions to the State certificate. It must be recognized, however, that the plain wording of the statutory provisions noted herein does indicate the areas of proper State inquiry, and important case law of New York does exist that spells out these limits of hearings of this exact nature as judicially viewed. Mtr. De Rham, supra, 32 N.Y.2d at 44–45, 343 N.Y.S.2d 84, 295 N.E.2d 763; Matter of Lloyd Harbor v. Diamond (unreported) (Sup.Ct., Albany Co., 1972, Pennock, J.).

The Court of Appeals, Second Circuit, has written on the statutory responsibilities of the Federal Power Commission in the consideration of license applications. Scenic Hudson Preservation Conf. v. Federal Power Commission, 354 F.2d 608, 617 (2d Cir. 1965), cert. den. sub nom. 384 U.S. 941, 86 S.Ct. 1462, 16 L. Ed.2d 540 (1966); see also Scenic Hudson Preservation Conf. v. Federal Power Commission, 453 F.2d 463, 470–473 (2d Cir. 1971), cert. den., 407 U.S. 926, 92 S.Ct. 2453, 32 L.Ed.2d 813 (1972); 16 U.S.C. § 803(a). It is important also to recognize that ENCON has the right to and has in fact intervened in the Federal Power Commission proceeding considering the Breakabeen project application, and can present and develop the matters that are reserved for federal appraisal and decision before the Commission. The point I make is that the New York State Authority and the New York State Department involved here should, in the interests of the New York citizens and taxpayers, make responsible judgments to keep the extent of State hearings within the proper bounds of the areas delineated by statutory and judicial guidelines.

In conclusion, for the reasons stated, the motion to dismiss the complaint filed by the defendants is granted on the *sua sponte* ground of lack of subject matter jurisdiction. In addition, the motion to dismiss is granted on the ground of failure to state a claim upon which proper declaratory or injunctive relief can be granted, and also upon the exercise of discretion not to entertain the complaint for the issuance of declaratory judgment. The temporary restraining order in effect is vacated as of Friday, May 3, 1974 at 2:00 P.M. The motion for preliminary injunction is denied and dismissed, based on my findings that there is no showing of likelihood of success or irreparable harm by the plaintiff, even though there be error in the dismissal of the complaint.

It is so ordered.