Water Supply and Pollution Control Commission
No. 7153

## TOWN OF SUTTON

v.

## WATER SUPPLY AND POLLUTION CONTROL COMMISSION

March 31, 1976

*Orr & Reno* and *Richard B. Couser (Mr. Couser* orally) for the plaintiff.

*Warren B. Rudman,* attorney general, and *Donald W. Stever, Jr.,* assistant attorney general *(Mr. Stever* orally), for the defendant.

DUNCAN, J. This is an appeal under RSA 541:6 from a determination by the Water Supply and Pollution Control Commission (commission) to "certify" to the United States Environmental Protection Agency (EPA) that the New London sewage treatment facility, as proposed, would comply with applicable state and federal law governing water quality standards and effluent discharge limitations. *See* RSA 149:14. The plaintiff, town of Sutton, contends that the commission acted unlawfully in certifying the federal permit inasmuch as the commission ignored the applicable date for compliance found in the federal law. *See* 33 U.S.C. § 1311 (b) (1) (C). The commission has answered in the alternative: (1) the certification process is created by federal law and as such, any appeal from that process properly lies in the federal court; (2) the decision of the commission, if reviewable in this court, is reasonable and not unlawful.

On May 15, 1973, the town of New London made application to the EPA for a federal permit to discharge an effluent of known quality into Lion Brook, a stream flowing into Kezar Lake in Sutton. The discharge would result from the operation of a sewage treatment facility located in New London, and under the control of the New London Sewer Commission.

Thereafter, the commission and the EPA gave notice of a joint public hearing with respect to the proposed federal permit and the accompanying state "certification". Evidence was taken and on January 8, 1975, the commission issued the certification in question. On January 16, 1975, the EPA issued the federal permit; thereafter the treatment facility had a "green light". The plaintiff in this case concerns itself specifically with the grant of certification. It has not appealed the EPA action in issuing the federal permit, nor has it appealed the commission's decision to grant the necessary state permit to operate the facility. RSA 149:8 III-a (Supp. 1975). The only question now presented to this court is as to the validity of the "certification".

The Federal Water Pollution Control Act Amendments of 1972 (P.L. 92-500, 86 Stat. 816) amended generally the provisions of the prior federal law dealing with pollution control in navigable waters. The Act (codified in part at 33 U.S.C. §§ 1251-1375) envisions extensive cooperation between the federal government and the States in the fight against water pollution. Section 1311 of title 33, U.S.C., makes it unlawful to discharge any pollutant into navigable waters except as provided thereafter. Section 1342 of title 33, U.S.C., authorizes the administrator of the EPA to issue a permit for the discharge of any pollutant subject to certain specified requirements. One of the requirements is that the prospective permittee furnish the EPA with "a certification from the State in which the discharge originates . . . that any such discharge will comply with the applicable provisions of sections 1311, 1312, 1316, and 1317 of this title". 33 U.S.C. § 1341 (a) (1). Unless the appropriate State agency fails to act upon certification "within a reasonable period of time" thereby waiving the requirements (33 U.S.C. § 1341 (a) (1)), the certification is a *sine qua non* for the issuance of a federal permit.

This case concerns specifically section 1311 of title 33 which establishes, *inter alia*, a timetable for the achievement of objectives. Section 1311 (b)(1)(C) requires that "not later than July 1, 1977" the proposed effluent discharge will "meet water quality standards,

treatment standards, or schedules of compliance, established pursuant to any State law or regulations . . . ." The plaintiff brought this appeal following a certification made pursuant to the foregoing provisions. We turn first to the defendant's argument that the certification is not a "decision or order" within the purview of RSA 541:1 *et seq.* and is properly appealable only in the federal courts. *See* 33 U.S.C. § 1369.

The legislative history of the Federal Water Pollution Control Act Amendments of 1972 (P.L. 92-500) and of its predecessor, the Water and Environmental Quality Improvement Act of 1970 (P.L. 91-224, 84 Stat. 91), indicates that the Congress did not intend to preempt the jurisdiction of the several States with respect to water pollution control within their borders. *See* 33 U.S.C. § 1251 (b); Rep. No. 92-414, 92d Cong., 1st Sess. 1-3 (1971) [hereinafter Senate Report] citing as an important principle of public policy: "The States shall lead the national effort to prevent, control and abate water pollution . . . the Federal role has been limited to support of, and assistance to, the States". *Id.* at 1. Numerous provisions in the Act evince this intent. Section 1370 of title 33 reserves to the States the power to enact more stringent legislation to control water pollution; section 1342 (a) (1) in conjunction with section 1311 requires that federal licensees comply with applicable state laws as a condition of license. To the same effect, section 1365 (e) authorizing "citizen suits" specifically states that the enforcement provisions contained therein shall not restrict any right under any statute or common law to seek enforcement or other relief "including relief against the Administrator or a State agency". 33 U.S.C. § 1365 (e). Although review of the State administrator's action is not necessarily confined to the State courts in all cases, it appears that Congress sought to preserve state review procedures so long as not in conflict with federal law. *See Power Authority v. Dep't of Environmental Conservation,* 379 F. Supp. 243 (N.D.N.Y. 1974); Senate Report at 69.

Furthermore, it is important to note that under section 1341 of title 33 (certification) the State agency responsible for certifying the permit is given the effective power to deny the permit simply by affirmatively denying certification. "No license or permit shall be granted if certification has been denied by the State . . . ." 33 U.S.C. § 1341 (a) (1). Referring specifically to this provision, the Senate report accompanying the bill makes clear that the authority of the State administrator is plenary in this regard "unless the State action

[is] overturned in the appropriate courts of jurisdiction". Senate Report at 69. The authors of the bill apparently considered that the certifying procedure should be subject to review in and of itself with no requirement that a challenge to certification or its denial be incorporated in a broader challenge to a federal permit. *See de Rham v. Diamond,* 32 N.Y.2d 34, 295 N.E.2d 763, 343 N.Y.S.2d 84 (1973); *Power Authority v. Dep't of Environmental Conservation,* 379 F. Supp. 243 (N.D.N.Y. 1974).

It is true that jurisdiction to review actions of the federal administrator is vested in the United States Courts of Appeals. 33 U.S.C. § 1369. However, effective review of the action of a State administrator may be severely limited in the context of a general challenge to the federal permit. For example, the National Environmental Policy Act of 1969 (P.L. 91-190, 83 Stat. 852 codified in 42 U.S.C. § 4321 *et seq.*), which is the seminal legislation in the area of environmental conservation, left unchanged a theretofore basic requirement that all federal agencies "act, or refrain from acting contingent upon the recommendations or certification of any other Federal or State agency". 42 U.S.C. § 4334. The EPA is itself denied the authority to look behind the state certification. Section 1371 (c) (2) (A) of title 33 states that "[n]othing in the National Environmental Policy Act of 1969 shall be deemed to authorize any Federal agency . . . to review . . . the adequacy of any certification under section 1341 of this title". Thus, the EPA is required to deny a federal permit if the state has denied certification (33 U.S.C. § 1341 (a) (1)), and is without authority to examine the basis upon which certification is withheld. The same rule holds true where a certification is granted, albeit the prospective permittee must also comply with the substantive provisions of the federal act. Under 33 U.S.C. § 1369 (b) (1) the United States Courts of Appeals have only limited jurisdiction to review the federal administrator's action "in issuing or denying any permit . . . ." If a permit may properly be issued by the EPA when in fact the certification upon which it is premised was improperly issued, it is doubtful that in a United States Court of Appeals an interested party would be entitled to review of state certification beyond the bare inquiry as to whether the certification is affixed to the permit.

Apart from these considerations, pragmatism requires that we take jurisdiction in this matter. We are asked to review nothing more than a decision of the State commission made under relevant state law. *See* 33 U.S.C. § 1311 (b) (1) (C). The State court is the

logical forum for review of such decisions. "It is the state courts which have the first and the last word as to the meaning of state statutes and whether a particular order is within the legislative terms of reference so as to make it the action of the State." *Pub. Serv. Comm'n v. Wycoff Co., Inc.*, 344 U.S. 237, 247 (1952).

Understandably, there is a paucity of case law discussing the jurisdiction of the State and the federal courts, respectively, in this complicated scheme of legislation. *Power Authority v. Dep't of Environmental Conservation*, 379 F. Supp. 243 (N.D.N.Y. 1974) was a suit seeking to enjoin the New York State Department of Environmental Conservation from conducting public hearings prior to a "section 1341" certification to the Federal Power Authority, a licensing agency within the terms of the statute. The plaintiffs argued that the inquiry contemplated by the precertification hearing was "outside the proper scope of the State's authority and would enter areas . . . preempted under the federal act . . . ." *Id.* at 245. In refusing the injunction the district court ruled that "the state courts of New York are a far more appropriate forum for the plaintiff to challenge the scope of the [precertification] hearings". *Id.* at 248. It would follow that State courts are the "more appropriate forum" to challenge the legal and factual underpinnings of certification itself.

In *de Rham v. Diamond*, 32 N.Y.2d 34, 295 N.E.2d 763, 343 N.Y.S.2d 84 (1973), the New York Court of Appeals undertook such a review of a certification issued under the predecessor of section 1341 which was essentially identical. In the course of reviewing the state action, the court noted that the provision of federal law establishing the certification procedure "relinquishes only one element of the otherwise exclusive jurisdiction" granted to the Federal Power Commission in that the States were left to "determine and certify" only that the proposed project would comply with applicable state law in regard to effluent discharge limitations. *Id.* at 44, 295 N.E.2d at 768, 343 N.Y.S.2d at 90. Consonant with this responsibility, the State courts have jurisdiction to review the validity of the grant or denial of "certification". Taken in sum, the relevant considerations involved lead to the conclusion that the decision of the State commission to issue certification pursuant to 33 U.S.C. § 1341 is reviewable under RSA 541:1 *et seq. See New Hampshire Bankers Ass'n v. Nelson*, 113 N.H. 127, 302 A.2d 810 (1973). This conclusion necessitates an examination of the plaintiff's claim that the certification was unlawful and in direct contravention of governing statutes.

The plaintiff argues as follows: The commission certified, *inter alia,* that the proposed effluent discharge at New London would "comply with the applicable provisions of sections 1311 . . . ." 33 U.S.C. § 1341 (a) (1). As noted above, section 1311 (b) (1) (C) requires that not later than July 1, 1977, the discharge point source shall be in compliance with "water quality standards, treatment standards, *or* schedules of compliance established pursuant to any State law or regulations . . . ." (Emphasis added.) The phase-in schedule which was established by the commission does not require the treatment facility to be fully operational until December 31, 1977, some six months after the critical date found in the federal legislation. *See* RSA 149:8 (Supp. 1975). Because of this lag, the waters of Lion Brook and Kezar Lake will not meet the substantive requirements for class B waters set forth in RSA 149:3 (Supp. 1975) until December 31, 1977. Hence, argues the plaintiff, the commission could not lawfully certify that the New London facility will comply with applicable state law by July 1, 1977, since on that date, it will be discharging an effluent which will cause Lion Brook and Kezar Lake to be classed as substandard. Were it not for the schedule for abatement provisions of RSA 149:8 II, such activity would be a clear violation of the statute. RSA 149:8 I (Supp. 1975).

RSA 149:8 II authorizes the commission to establish reasonable timetables for compliance with pollution abatement orders. The commission found it reasonable to set a target date of December 31, 1977, for full operation of the New London facility. The schedule contains interim levels of abatement in order to insure successful phase-in of the facility. By certifying this facility, the commission represented to the EPA that not later than July 1, 1977, the treatment facility would be in compliance with the phase-in schedule established by the commission under RSA 149:8.

Section 1311 (b) (1) (C) of title 33 does not require that the facility be fully operational by July 1, 1977, so that Lion Brook and Kezar Lake will thereupon meet the standards for class B waters. It merely requires that on or before July 1, 1977, the facility shall be in compliance with the phase-in schedule established by state law. The plaintiff does not contend that the facility will not always be in compliance with the schedule established by the commission. Under these circumstances, the grant of certification was proper. *de Rham v. Diamond,* 32 N.Y.2d 34, 295 N.E.2d 763, 343 N.Y.S.2d 84 (1973).

*Petition dismissed.*

Kenison, C.J., did not participate in the decision; Grimes, J., did not sit; the others concurred.