**CUMBERLAND CAPITAL CORPORATION**

v.

**Patricia Roberts HARRIS, Secretary of Housing and Urban Development, and Alan J. Kappeler, Acting Administrator, Office of Interstate Land Sales.**

**No. 76–16–NA–CV.**

United States District Court, M. D. Tennessee, Nashville Division.

Sept. 20, 1977.

James F. Neal, Nashville, Tenn., for plaintiff.

Hal D. Hardin, U. S. Atty., Nashville, Tenn., for defendants.

## MEMORANDUM

MORTON, Chief Judge.

Plaintiff Cumberland Capital Corporation ("Cumberland Capital") filed this action on January 15, 1976, seeking a declaratory judgment that its land sales operations were not subject to the provisions of the Interstate Land Sales Full Disclosure Act ("Interstate Land Sales Act"), 15 U.S.C. § 1701, et seq., and further seeking injunctive relief against defendants Patricia Roberts Harris, Secretary of the Department of Housing and Urban Development ("HUD"), and Alan J. Kappeler, Acting Administrator, Office of Interstate Land Sales, to prevent them from taking any further administrative action to subject plaintiff's operations to the provisions of the Act.[1] On March 29, 1976, defendants answered the complaint and counterclaimed against plaintiff for enforcement of an administrative subpoena issued to plaintiff on December 5, 1976, pursuant to 15 U.S.C. § 1714, to compel the production of certain books, records, and other information by plaintiff in furtherance of defendants' investigation of possible violations of the Interstate Land Sales Act by plaintiff. Plaintiff answered defendants' counterclaim on June 9, 1976.

This case was submitted to the court for decision on the pleadings, a stipulation of facts, the affidavit of Richard Dance, plaintiff's Vice-President and General Counsel, and cross motions for summary judgment. Based on the stipulation of facts and the affidavit of Mr. Dance, the court makes the following findings of fact.

---

1. Carla A. Hills and John R. McDowell were originally named as party defendants to this action. Their successors were automatically substituted as defendants upon their taking office. Rule 25(d)(1), Federal Rules of Civil Procedure.

## FINDINGS OF FACT

Plaintiff Cumberland Capital is a corporation organized and existing under the laws of the State of Indiana, and is qualified to do business in, and does business in, the State of Tennessee, with principal offices in Nashville, Davidson County, Tennessee. Plaintiff is engaged in the finance and loan business, and lends money on security at lawful interest rates.

Defendant Patricia Roberts Harris is the Secretary of HUD, an agency of the United States government. Alan J. Kappeler is the Acting Administrator, Office of Interstate Land Sales, a division of HUD. Defendant Harris is ultimately responsible for the administration of the Interstate Land Sales Act, while defendant Kappeler has primary responsibility for such administration.

By letter dated October 8, 1974, HUD, by and through its then Interstate Land Sales Administrator, George K. Bernstein, requested information from Cumberland Capital concerning sales of certain lots it had made in the Timberlake Subdivision located in Sevier County, Tennessee. Included in said letter was a questionnaire which Cumberland Capital was to complete and return to HUD within fifteen days from the date of the letter. The questionnaire was answered and returned by Cumberland Capital by and through its Vice-President, A. C. Spain, on October 23, 1974. Trustee's deeds by which Cumberland Corporation acquired certain lots in Timberlake Subdivision were also attached to the questionnaire and submitted to HUD.

By letter dated February 5, 1975, John R. McDowell, the Acting Interstate Land Sales Administrator for HUD, requested that plaintiff clarify some of its responses to the questionnaire. Plaintiff submitted its responses to the requests for clarification in a letter from Richard Dance to HUD dated February 28, 1975. On May 21, 1975, the following letter was sent to Mr. Dance by Mr. McDowell:

This is in response to our recent inquiry regarding lot sales in Timberlake and other subdivisions in which Cumberland Capital Corporation has an interest.

The Interstate Land Sales Full Disclosure Act, which this Office administers, applies to lot sales programs containing 50 or more lots pursuant to a common promotional plan where any means or instruments of interstate commerce or the mails are used to sell or lease lots. The sale of lots exclusively to residents of the situs state does not of itself constitute exemption from the Act. Advertising in publications that have an interstate circulation, signs on interstate highways, use of the telephones or any use of the mails in the operation of the subdivision, including the billing or collection of installment payments is sufficient to bring the subdivision under the jurisdiction of the Act.

From the information we have obtained, it appears that the lot sales program of Cumberland Capital Corporation is subject to the requirements of the Act. Indications are that there has been a common promotional plan to sell or lease more than 50 lots. In determining a common promotional plan, the developer's overall operation is considered. Among the most important characteristics which are evaluated in determining a common promotional plan are: a thread of common ownership, common sales agents, common sales office or common facilities, common inventory, common advertising, etc.

Under the circumstances, any non-exempt lot sales or leases made before Cumberland Capital Corporation is in compliance with the Act are a violation of Federal law and may be voidable at the option of the purchasers. If you wish to continue selling or leasing lots, you must first register the subdivision(s) with this Office or obtain an exemption from the registration requirements of the Act. Detailed instructions for the preparation of a Statement of Record can be found in 24 CFR, Section 1710.105, a copy of which we enclose. Instructions and qualifications regarding exemptions can be found under 1710.10, 1710.11, 1710.13, 1710.14, and 1710.15.

As requested in our letter of October 8, 1974, we again ask that you submit to this Office a list of all subdivisions in which Cumberland Capital Corporation has offered lots for sale since April 28, 1969. The list shall indicate the subdivision names, the number of lots owned by Cumberland Capital Corporation, the location of the subdivisions, the date(s) of sale, and the method of sale.

In addition, we request that you submit the list of the names, addresses, lot numbers, dates of purchase, and approximate amount of payments to date for all sales made in the following subdivisions subsequent to January 27, 1972: Davis Hills, Big River Overlook, Hidden Mountain, Greater Boyds Creek, Timberlake, and Bluff Heights. The list should be accompanied by an affidavit, signed by an executive of the company, attesting to the list's completeness and accuracy. In addition, we ask that you designate those sales which may have qualified as exempt transactions pursuant to 24 CFR, Section 1710.10. Please specify the relevant provision of Section 1710.10.

We shall expect to receive the above requested information within 20 days of your receipt of this letter. We wish to remind you that Section 1415 of the Act confers upon the Secretary of HUD or her authorized designee the authority to subpoena records, require testimony, and to initiate injunctive action.

Please direct your response to the attention of Ms. Jane Scott. If you have any questions concerning this correspondence, you may contact Ms. Scott at (202) 426-0938.

Various correspondence was then exchanged by the parties. An informal conference was also held in defendants' offices in Washington, D. C. On November 3, 1975, Mr. McDowell corresponded with Mr. Dance and informed him that pursuant to plaintiff's request, a hearing regarding the applicability of the Interstate Land Sales Act to the sales program of Cumberland Capital would be held on November 12, 1975, in defendants' Washington, D. C. offices.[2] On November 11, 1975, Mr. Dance advised Mr. McDowell that Cumberland Capital would not attend the meeting scheduled for the following day.

On December 5, 1975, a subpoena duces tecum et subpoena ad testificandum was issued by HUD to Paul R. Rogers, one of plaintiff's vice-presidents. A motion to quash the subpoena was filed by plaintiff with HUD. The motion to quash was denied by HUD in a letter dated January 2, 1976. This suit was thereafter filed by plaintiff.

## CONCLUSIONS OF LAW

Plaintiff asserts that this court has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, the Administrative Procedure Act, 5 U.S.C. §§ 701–06, and 28 U.S.C. § 1331(a). Defendant contends that the court lacks jurisdiction because no final agency action has been taken, and because review of HUD's determination that plaintiff is subject to the provisions of the Interstate Land Sales Act may only be obtained in the appropriate United States Court of Appeals. For the reasons hereinafter stated, the court finds that it lacks jurisdiction to grant the requested relief.

5 U.S.C. § 704 provides as follows:

Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action mean-

2. Said hearing was tendered to plaintiff despite the fact that there is no formal hearing procedure in HUD under the Interstate Land Sales Act.

while is inoperative, for an appeal to superior agency authority.

Thus, if the agency action in question is not final, it may not be reviewed under the provisions of the Administrative Procedure Act. *See Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). Moreover, since the Declaratory Judgment Act does not afford an independent basis for jurisdiction, if an agency's action is not final so as to be reviewable under the Administrative Procedure Act, it is not final so as to be reviewable under the Declaratory Judgment Act. *See Continental Bank & Trust Co. v. Martin*, 303 F.2d 214 (D.C.Cir. 1962); *Wilmington Chemical Corp. v. Celebrezze*, 229 F.Supp. 168 (N.D. Ill.1964); *Luff v. Ryan*, 128 F.Supp. 105 (D.D.C.1955). *See also City of Highland Park v. Train*, 374 F.Supp. 758 (N.D.Ill. 1974), aff'd, 519 F.2d 681 (7th Cir. 1975), cert. denied, 424 U.S. 927, 96 S.Ct. 1141, 47 L.Ed.2d 337 (1976). Thus, unless the decision of the Administrator of the Office of Interstate Land Sales that plaintiff is subject to the requirements of the Interstate Land Sales Act is final in nature, the court lacks jurisdiction to review said decision.

 The basic rationale behind the doctrine of finality or ripeness for judicial determination is

to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. *Abbott Laboratories v. Gardner, supra*, 387 U.S. at 148–49, 87 S.Ct. at 1515.

*See also McKart v. United States*, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). Among the relevant considerations in determining whether an administrative order is final and whether a challenge to an administrative decision is ripe for judicial determination are:

(1) whether the process of administrative decision-making has reached the stage where judicial review will not disrupt the orderly process of adjudication;

(2) whether the particular questions involved are more legal or factual in nature;

(3) whether rights or obligations have been determined or legal consequences will flow from the agency action; and

(4) the relative hardship to the parties of withholding court consideration at this time.

*Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71, 91 S.Ct. 203, 209, 27 L.Ed.2d 203 (1970); *Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 162, 87 S.Ct. 1520, 1523, 18 L.Ed.2d 697 (1967); *Abbott Laboratories v. Gardner, supra*, 387 U.S. at 148, 87 S.Ct. at 1515; *Chicago & Southern Air Lines, Inc. v. Waterman Steamship Corp.*, 333 U.S. 103, 112–13, 68 S.Ct. 431, 436–37, 92 L.Ed. 568 (1948); *Bituminous Coal Operators Ass'n, Inc. v. Secretary of Interior*, 547 F.2d 240, 244 (4th Cir. 1977); *Fidelity Television, Inc. v. Federal Communications Commission*, 502 F.2d 443, 448 (D.C. Cir. 1974); *Aquavella v. Richardson*, 437 F.2d 397, 403–04 (2d Cir. 1971). The declaratory judgment procedure may not be used to preempt or prejudge issues that are committed for initial decision to an administrative body. *Public Service Commission v. Wycoff Co.*, 344 U.S. 237, 246, 73 S.Ct. 236, 241, 97 L.Ed. 291 (1952); *Power Authority v. Department of Environmental Conservation*, 379 F.Supp. 243, 248 (N.D.N.Y.1974); *Schwarze v. Farm-Rite Implement Co.*, 192 F.Supp. 645, 650 (D.N.D.1960). Where administrative intention is expressed but has not come to fruition, or where that intention is unknown, a controversy is not ripe for equitable intervention. *Eccles v. Peoples Bank*, 333 U.S. 426, 434–35, 68 S.Ct. 641, 645–46, 92 L.Ed. 784 (1948). A declaratory judgment is improper when ongoing activity may radically change the factual situation underlying a disputed agency determination. *Norvell v. Sangre de Cristo Development Co.*, 519 F.2d 370, 378 (10th Cir. 1975). Sound discretion bids a court to stay its hand where it has reason to believe that further agency consideration may resolve

the dispute and obviate the need for judicial action.[3] *See National Resources Defense Council, Inc. v. Train,* 510 F.2d 692 (D.C. Cir. 1975). In short, "the lack of any formalized final administrative action compels a federal court not to enter . . . a dispute in the embryonic stage." *Power Authority v. Department of Environmental Conservation, supra,* at 245. However, the principle of finality is to be interpreted in a pragmatic way, and is to be governed by a realistic assessment of the nature and effect of the order sought to be reviewed. *Abbott Laboratories v. Gardner, supra,* 387 U.S. at 149, 87 S.Ct. at 1515; *Fidelity Television, Inc. v. Federal Communications, Commission, supra,* at 448. The ruling of the head of an agency is "presumptively final" unless it indicates on its face that it is tentative, or an agency rule identifies such a decision as tentative and subject to reconsideration. *National Automatic Laundry & Cleaning Council v. Schultz,* 443 F.2d 689, 701 (D.C. Cir. 1971).

 Based on the preceding discussion, it is clear that no final determination has been made in this case. It is true that a determination that plaintiff's activities are subject to the requirements of the Interstate Lands Sales Act has been made. However, it is also true that such determination is tentative, not final, in nature. In his May 21, 1975, letter to Mr. Dance, Mr. McDowell wrote that *"it appears that* the lot sales program of Cumberland Capital Corporation is subject to the requirements of the Act," and that *"[i]ndications are* that there has been a common promotional plan to sell or lease more than 50 lots" (emphasis added).[4] This language is clearly tentative on its face, and thus there is no presumption that the Administrator's decision is final. It may well be that the Administrator may change his initial decision and thus

resolve the dispute once he has completed his investigation, which as of this date has not yet been completed. Thus, the court concludes that the decision of the Administrator is not a final decision as that term is used and defined by the Administrative Procedure and Declaratory Judgment Acts, and that judicial interference in the administrative process at this point in time would disrupt the orderly process of adjudication. Therefore, the court finds that it lacks jurisdiction to grant the requested relief, and that this controversy is not ripe for judicial determination. Moreover, assuming that the Administrator's decision is final, the court in its discretion would decline to issue the declaratory judgment because proceedings are still continuing before the Administrator, and thus there is the possibility that the Administrator may reverse his initial determination.

 However, assuming that the decision of the Administrator was final and that the court in its discretion was inclined to issue a declaratory judgment, the court would still lack jurisdiction to grant the declaratory judgment. 15 U.S.C. § 1710(a) provides in pertinent part as follows:

> Any person, aggrieved by an order or determination of the Secretary issued after a hearing, may obtain a review of such order or determination in the court of appeals of the United States, within any circuit wherein such person resides or has his principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the entry of such order or determination, a written petition praying that the order or determination of the Secretary be modified or be set aside in whole or in part.

15 U.S.C. § 1719 provides in pertinent part as follows:

---

**3.** The Declaratory Judgment Act authorized federal courts to grant declaratory relief. However, it did not impose a duty on the courts to do so when declaratory relief was requested. Thus, it is discretionary with the court whether to grant declaratory relief. *Public Affairs Associates, Inc. v. Rickover,* 369 U.S. 111, 112, 82 S.Ct. 580, 581, 7 L.Ed.2d 604 (1962); *Public Service Commission v. Wycoff Co., supra,* 344

U.S. at 241, 73 S.Ct. at 239; *Power Authority v. Department of Environmental Conservation, supra* at 248; *Minneapolis Grain Exchange v. Farmers Union Grain Exchange,* 75 F.Supp. 577, 581 (D.Minn.1947).

**4.** See pages 3–4, *supra* for the complete text of Mr. McDowell's May 21, 1975 letter.

The district courts of the United States, the United States courts of any territory, and the United States District Court for the District of Columbia shall have jurisdiction of offenses and violations under this chapter and under the rules and regulations prescribed by the Secretary pursuant thereto, and concurrent with State courts, of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter.

It is clear from a careful reading of the language of these sections of the Interstate Land Sales Act that the jurisdiction of a United States District Court is limited solely to suits brought to enforce duties or liabilities created by the Act. Any review of a decision by the Administrator or Secretary must be obtained in the United States Courts of Appeals. Since what plaintiff has sought to do in this action is to have the court review the Administrator's decision and not to enforce duties or liabilities created by the Act, the court lacks jurisdiction over the subject matter of the complaint. Therefore, this complaint must fail for failure to bring it in the proper forum. *See Commodore Properties, Inc. v. Hills*, 417 F.Supp. 1388 (D.Neb.1976); *Rockefeller v.*

*High Sky, Inc.*, 394 F.Supp. 303 (E.D.Pa. 1975).[5]

█ In so ruling, the court would note that it is not foreclosing the possibility of plaintiff ever obtaining judicial review of the Administrator's decision. Once the Administrator has made a final decision, plaintiff may obtain review of it in either the United States Court of Appeals for the District of Columbia or in the United States Court of Appeals for the Sixth Circuit. The practical effect of this court's decision that it lacks jurisdiction to grant the declaratory judgment is to postpone judicial review of the Administrator's decision and maybe even obviate the need for judicial review if the final decision of the Administrator is favorable to plaintiff. Plaintiff still can be afforded the full protection of the law in the ordinary course of judicial review. It just may have to wait a little longer to obtain judicial vindication.[6] *See McKart v. United States, supra*, 395 U.S. at 195, 89 S.Ct. 1663; *Pharmaceutical Manufacturers Ass'n v. Gardner*, 381 F.2d 271 (D.C. Cir. 1967); *Power Authority v. Department of Environmental Conservation, supra*, at 246.

Turning to the question of defendants' counterclaim, defendants have sought to have this court enforce the subpoena it issued to plaintiff on December 5, 1975.[7]

**5.** Plaintiff contends that 15 U.S.C. § 1710(a) is not applicable because there is no formal hearing procedure under the Interstate Land Sales Act. The court finds this contention to be without merit. Plaintiff was afforded the opportunity for a hearing even though there is no formal hearing procedure. Moreover, the court does not consider the lack of a formal hearing procedure to be crucial. The crucial consideration is that Congress specifically intended that Courts of Appeals and not District Courts would review administrative decisions under the Interstate Land Sales Act.

**6.** In passing, the court would note that if the case were properly before it, it would rule as a matter of law that plaintiff's land sales operations are not subject to the provisions of the Interstate Land Sales Act. The court has carefully considered the thousands of words of testimony and congressional expressions of purpose recorded concerning this Act. Nowhere in any recorded document can be found any thought or implication that land sales operations of the type in which plaintiff has engaged were to be encompassed within the Act. The proceedings by which the Administrator has

tentatively so found have been sloppy at their best, and reckless at their worst. However, since the court lacks jurisdiction over the subject matter of this complaint, the preceding discussion is purely academic and nothing more than dictum. Perhaps, however, this discussion will in some way indicate to the Administrator the thinking of one court on the issues presented by this case.

**7.** The court is empowered to enforce defendants' subpoenas by 15 U.S.C. § 1714(d), which provides as follows:

In case of contumacy by, or refusal to obey a subpena issued to, any person, the Secretary may invoke the aid of any court of the United States within the jurisdiction of which such investigation or proceeding is carried on, or where such person resides or carries on business, in requiring the attendance and testimony of witnesses and the production of books, papers, correspondence, memorandums, and other records and documents. And such court may issue an order requiring such person to appear before the Secretary or any officer designated by the Secretary,

Plaintiff challenges the enforcement of the subpoena on the grounds that it is overbroad, unduly burdensome, and unreasonable. For the reasons hereinafter stated, the court finds that the subpoena should be enforced, but modified.

The standards for determining whether an administrative subpoena should be enforced were set forth by the Supreme Court in *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). In order to obtain enforcement of the subpoena in issue in this case, the Secretary must show:

(1) that the investigation being conducted is being conducted for a legitimate purpose;

(2) that the inquiry being made is relevant to that purpose;

(3) that the information being sought through the subpoena is not already within the possession of the agency; and

(4) that the administrative steps required by Congress have been followed. 379 U.S. at 57–58, 85 S.Ct. at 254–255.

*See also Donaldson v. United States,* 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971); *United States v. Morton Salt Co.,* 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950); *Oklahoma Press Pub. Co. v. Walling,* 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946); *Lynn v. Biderman,* 536 F.2d 820 (9th Cir.), *cert. denied,* 429 U.S. 920, 50 L.Ed.2d 287 (1976); *United States v. Church of Scientology,* 520 F.2d 818 (9th Cir. 1975).

It is the opinion of the court that defendants have made the required showing here. While the court may disagree with the initial findings of the defendants, it has no doubts, and so finds, that the investigation is being conducted for a legitimate purpose, that the inquiry being made is relevant to that purpose, and that the information being sought is not already in HUD's possession. Moreover, the court finds that the subpoena was issued in strict compliance with the directives of Congress and the regulations adopted by the Secretary. *See* 15 U.S.C. § 1714(c); 24 C.F.R. § 1720.70. The Secretary is entitled to obtain sufficient information to make an informed decision as to whether plaintiff's activities come within the purview of the Interstate Land Sales Act. This subpoena is directed towards obtaining this information. Therefore, this subpoena will be enforced. *See Lynn v. Biderman, supra.*

While enforcing the subpoena, the court notes that it must be modified in two respects. The subpoena is directed to Paul R. Rogers, one of plaintiff's vice presidents. Plaintiff asserts that since Mr. Rogers has had no contact with HUD in connection with this matter, and since he does not have any direction or control over the property in question, he is not the proper person to be subpoenaed. The court finds itself in agreement with plaintiff. What is crucial here is that defendants obtain the information they need, not that they obtain it from a specific individual. Therefore, the court will order the subpoena be modified to provide that Paul R. Rogers or another knowledgeable officer of Cumberland Capital appear before defendants and supply the requested information.[8] *See Oriole Homes Corp. v. Harris,* No. FL 75–442–CIV–SMA (S.D.Fla., filed February 24, 1977).

The second modification that must be made concerns what information plaintiff must produce. The subpoena requests information from January 27, 1972, to the present date. Plaintiff asserts, and the court agrees, that the subpoena in this respect is overly broad and burdensome. Therefore, the court will order that the subpoena be modified to provide that plain-

---

there to produce records, if so ordered, or to give testimony touching the matter under investigation or in question; and any failure to obey such order of the court may be punished by such court as a contempt thereof. All process in any such case may be served in the judicial district whereof such person is an inhabitant or wherever he .may be found.

8. The court would note that in their prayer for relief in their counterclaim, defendants requested that this court order Paul R. Rogers or "another officer of plaintiff-counterdefendant" to appear before defendants and to produce the requested information.

tiff be required to furnish HUD with the names and addresses of all purchasers of lots between January 27, 1972, and June 30, 1975.[9]

Plaintiff has also expressed its concern to the court that the Secretary may prematurely notify purchasers of lots from plaintiff of their right to rescind their purchases. The court shares plaintiff's concern. Therefore, the court will stay its order enforcing defendants' subpoena. During that time, the court will entertain any motions plaintiff may file for a protective order. *See Lynn v. Biderman, supra,* at 826–27.

Accordingly, plaintiff's motion for summary judgment must be denied, and defendants' granted. An appropriate order will be entered.

See also, D.C., 489 F.Supp. 576.

---

**9.** The court would note that defendants have previously indicated that they are willing to limit the subpoena as the court will order it to be limited. *See* Affidavit of Richard Dance, at page 11. The parties may further limit the time period to be covered by agreement.