UNITED STATES of America, Plaintiff,

v.

The FIRESTONE TIRE AND RUBBER COMPANY, Defendant.

No. C73–836.

United States District Court,
N. D. Ohio, E. D.

Jan. 10, 1974.

As Amended Jan. 10, 17, 1974.

Frank Moore, Robert A. McNew, Anti-Trust Div., Cleveland, Ohio, Joseph T. Maioriello, Dept. of Justice, Washington, D. C., for plaintiff.

Dennis M. Kelly, Cleveland, Ohio, Hammond E. Chaffetz, George D. Newton, Jr., Chicago, Ill., Harold L. Henderson, Bath, Ohio, Firestone Tire & Rubber Co., Joseph E. Downs, Akron, Ohio, for defendant.

## MEMORANDUM OPINION

BATTISTI, Chief Judge.

In this civil antitrust suit, the Government charges that from about 1959 to date defendant Firestone Tire and Rubber Company, an Ohio corporation, has engaged in numerous activities designed to secure a monopoly in the manufacture and sale of replacement tires, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, and has made certain corporate acquisitions between 1959 and 1967 violative of Section 7 of the Clayton Act, 15 U.S.C. § 18.

Defendant, in its answer, has interposed as a "First Affirmative Defense": "Plaintiff is not entitled to equitable relief because of its unconscionable delay."

Additionally, in Paragraph 19 of its answer, defendant, while admitting having made many of the acquisitions enumerated in the Government's complaint, adds that three of such acquisitions were made "with the knowledge and acquiescence of the plaintiff."

The Government has moved pursuant to Rule 12(f) F.R.Civ.P. to strike defendant's "First Affirmative Defense" as being legally insufficient, and to strike the phrase "with knowledge and acquiescence of the plaintiff," contained in Paragraph 19 of defendant's answer, on the ground that this allegation is immaterial and impertinent.

■ The defense of "unconscionable delay" or laches is no bar to a suit brought by the Government to vindicate a public right, particularly one so important as the effective enforcement of the Nation's antitrust laws. United States v. New Orleans Chapter, Associated General Contractors, 382 U.S. 17, 86 S.Ct. 33, 15 L.Ed.2d 5 (1968) reversing per curiam 238 F.Supp. 273 (E.D.La.1964); Times-Picayune v. United States, 345 U.S. 594, 623–624, 73 S.Ct. 872, 97 L.Ed. 1277 (1953); United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 225–228, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); United States v. Pennsalt Chemicals Corp., 262 F.Supp. 101 (E.D.Pa.1967); United States v. Shubert, 14 F.R.D. 471, 474 (S.D.N.Y.1953).

■ Defendant has cited to the Court a number of cases which it contends stand for the proposition that Government suits in equity may be barred, in certain circumstances, by the doctrine of laches, or the doctrine of equitable estoppel. See e. g. Michigan v. Jackson, 69 F. 116 (6th Cir. 1895); Iowa v. Carr, 191 F. 257 (8th Cir. 1911); The Falcon, 19 F.2d 1000 (D.Md.1927). Insofar as these cases support defendant's contention, they are entirely inapplicable here. Generally, they involved actions wherein the Government or one of the states was more basically proceeding in what has been obliquely termed its "proprietary," rather than "sovereign" capacity, seeking to prevail as against the compelling equities of bona fide private purchasers and the like. When confronted with such circumstances, courts, in the interests of justice, are manifestly more willing to subject Government fully to equitable defenses such as estoppel, particularly inasmuch as the public interest would not be unduly harmed. See e. g. United States v. Georgia Pacific Co., 421 F.2d 92 (9th Cir. 1970). This being so, it remains clear, however, that principles of equity may not be applied to the United States in such a manner as to frustrate the purpose of its laws or to thwart its public policy. Pan American Petroleum & Transport Co. v. United States, 273 U.S. 456, 505–506, 47 S.Ct. 416, 71 L.Ed. 734 (1927).

The Government's motion to strike defendant's "First Affirmative Defense" is, accordingly, granted. The defense is wholly insufficient as a matter of law.

■ In evaluating defendant's "knowledge and acquiescence" allegation, contained in Paragraph 19 of its answer, for purposes of the Government's motion to strike, it must first be said that this allegation raises many of the same points that have already been dealt with in regard to defendant's "First Affirmative Defense" of "unconscionable delay" or laches. Significantly, defendant does not either allege or contend that it ever gained any immunity or received any lawfully authorized exemption from the antitrust laws with regard to the acquisitions here in question. Absent this, the alleged "knowledge or acquiescence" on the part of the Government or its agencies at any particular time with regard to these acquisitions would not bar a subsequent suit to enforce the antitrust laws when it is determined, after further consideration, that such is necessary in the public interest. United States v. E. I. duPont deNemours &

Co., 353 U.S. 586, 597–598, 77· S.Ct. 872, 1 L.Ed.2d 1057 (1957) ; United States v. Socony-Vacuum Oil Co., *supra.*[1]

Defendant, however, has injected an additional argument. It submits that since it is being charged with attempting to monopolize the manufacture and sale of replacement tires in violation of Section 2 of the Sherman Act, and since the Government has alleged that the acquisitions under consideration comprise an important component of this "attempt," its allegations as to the "knowledge and acquiescence" of the Government would at least bear some relevance as to whether it possessed the requisite specific intent to monopolize. In support of this argument, defendant relies, principally, on Times-Picayune Publ. Co. v. United States, *supra*, 345 U.S. at 623–624, 73 S.Ct. 872 and United States v. Socony-Vacuum Oil Co., *supra*, 310 U.S. at 228, 60 S.Ct. 811.

 Motions to strike matter in pleadings are not favored by the Federal Courts, and should not be granted unless it is apparent that such matter can have no possible relation to the controversy. Brown & Williamson Tobacco Corp. v. United States, 201 F.2d 819, 822 (6th Cir. 1953) ; Pessin v. Keeneland Ass'n, 45 F.R.D. 10, 13 (E.D.Ky.1968).

██ ██ · It is best not to determine at this point in the case whether the matters raised by the challenged allegation are entirely extraneous or immaterial to the issue of "specific intent" under Section 2 of the Sherman Act. The interaction of the defendant and the Government with regard to these acquisitions and the Government's alleged longstanding acquiescence may have a possible bearing on defendant's monopolistic intent. *Cf.* United States v. Inter-Island Steam Nav. Co., 87 F.Supp. 1010 (D. Haw.1950). Moreover, the Government has failed to show how it could be prejudiced by allowing the allegation to remain in the answer. *See* Pessin v. Keeneland Ass'n, *supra.* It argues, only, that failure to strike this allegation may subject it to protracted and costly discovery concerning what it considers to be spurious and collateral issues. The protective provisions of the discovery rules of the Federal Rules of Civil Procedure would, in such an eventuality, provide it with redress. United States v. Elliot Knitwear Co., CCH Trade Cases ¶ 71,885 (S.D.N.Y.1966).

 The parties are cautioned in any event that facts amounting to laches on the part of the Government are not irrelevant to the Court's ultimate fashioning of relief, if such becomes necessary. And it should also be said that the action taken by this Court, in particular the striking of defendant's "First Affirmative Defense," may not be viewed as setting boundaries in this case for permissible discovery. United States v. Pennsalt, *supra.*

It is so ordered.

---

1. In this regard, it is interesting to note that the "Business Review Procedure" established by the Antitrust Division of the Department of Justice to provide assistance to businessmen in doubt about the legality of proposed transactions or acquisitions (see 28 C.F.R. ¶ 50.6 [1973]) explicitly provides that any party requesting assistance may "rely upon only a written business review letter signed by the Attorney General, Deputy Attorney General, or Assistant Attorney General in charge of the Antitrust Division." Moreover, it is made clear that this "business review letter states only the enforcement intention of the Division as of the date of the letter, and the Division remains completely free to bring whatever action or proceeding it subsequently comes to believe is required by the public interest."