**Ralph JOHNSON, Plaintiff-Appellee,**

**and**

**Norma Jean S. Johnson, Administratrix of the Estate of Fairis Johnson, Deceased, Plaintiff-Appellee,**

**v.**

**UNITED STATES of America, Defendant-Appellant.***

**Nos. 77–1469, 77–1470, 77–1471 and 77–1472.**

United States Court of Appeals, Sixth Circuit.

Argued June 20, 1979.

Decided Sept. 7, 1979.

---

* *Editor's Note:* The opinion of the United States Court of Appeals, Fifth Circuit in *United States v. Gorel,* published in the advance sheets at this citation (602 F.2d 734), was withdrawn from the bound volume by order of the court.

Patrick H. Molloy, U. S. Atty., Lexington, Ky., M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Michael L. Paup, Jane M. Edmisten, Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellant.

Charles F. Wood, Louisville, Ky., J. Leonard Walker, Louisville, Ky., for plaintiff-appellee.

Before CELEBREZZE, Circuit Judge and PHILLIPS, Senior Circuit Judge, and THOMAS, District Judge.*

WILLIAM K. THOMAS, District Judge.

The United States appeals from that part of the "amended judgment *nunc pro tunc*" of the trial judge:

. . . which—in accordance with the "order" of the District Court dated and filed April 19, 1977—limits interest before judgment to defendant, United States of America, to a period beginning with the date, notice and demand was made with respect to the assessments in issue and ending one year from the date of the filing of complaint herein.

Pursuant to 26 U.S.C. § 6672,[1] the United States assessed Ralph Johnson and Fairis Johnson, each as an officer of Central Quality Coal Company, Inc. and each as an officer of Kentucky Esco Company, Inc. (thus as "responsible person"), for each individual's alleged willful failure as an officer of each corporation to pay to the Internal Revenue Service the unpaid but withheld federal income taxes and F.I.C.A. (Social Security) taxes on the wages such corporations paid to their employees for the designated quarters.

Plaintiff Ralph Johnson paid $980.73 on April 4, 1973 towards penalties assessed by the government in connection with the two companies. Similarly, plaintiff Fairis Johnson paid $1,268.38 on April 4, 1973 towards the penalties assessed. A separate action to recover the portions of the assessment paid as to each company pursuant to 28 U.S.C. § 1346(a)(1), was brought by Ralph Johnson and Fairis Johnson.[2]

The United States counterclaimed in each of the four suits. In each suit involving Central Quality Coal Company, the United States asked judgment against the particular plaintiff in the amount of $54,724.93

---

* The Honorable William K. Thomas, United States District Judge for the Northern District of Ohio, Eastern Division, sitting by designation.

1. Section 6672, "Failure to collect and pay over tax, or attempt to evade or defeat tax," provides in part:

(a) General rule.—Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable. In *Slodov v. United States,* 436 U.S. 238, 246, n. 7, 98 S.Ct. 1778, 56 L.Ed.2d 251, the Court explains the origin of the term "responsible persons":

The cases which have been decided under § 6672 generally refer to the "person required to collect, truthfully account for and pay over any tax imposed by this title" by the shorthand phrase "responsible person."

2. Norma Jean S. Johnson, Administratrix of the Estate of Fairis Johnson, deceased, was substituted as party plaintiff on April 23, 1976.

(less credit for the April 4 payment). In each suit involving the Kentucky Esco Coal Company, the United States asked judgment against the particular plaintiff in the amount of $49,377.63 (less credit for the April 4 payment). On each counterclaim the government asked for "interest thereon in accordance with law."

The four suits were filed on April 27, 1973 in the United States District Court for the Eastern District of Kentucky at Pikeville. The consolidated cases were tried to a jury beginning November 1, 1976; and on November 3, 1976, jury verdicts were returned in favor of the United States of America and against the plaintiffs, Ralph Johnson and Norma Jean S. Johnson, Administratrix of the Estate of Fairis Johnson. The court entered judgments (with no dollar amounts specified) on the verdicts on March 31, 1977.

Thereafter on April 11, 1977, the United States moved to alter or amend the judgment:

> . . . so as to reflect the principal amount for which plaintiffs, Ralph Johnson and Norma Jean S. Johnson, Administratrix of the Estate of Fairis Johnson, are liable and to reflect the allowance of prejudgment and post judgment interest on the amounts of the judgments.

In the two "Central Quality" judgments against Ralph Johnson and the estate of Fairis Johnson, deceased, the government asked specifically for judgment,

> . . . in the amount of $53,427.65 plus prejudgment interest from the date of notice and demand, March 11, 1971 to the date of judgment of $21,065.91 for a total of $74,493.56, with statutory interest on the total amount of $74,493.56 from and after the date of judgment entry.

In the two "Kentucky Esco" judgments against Ralph Johnson and the estate of Fairis Johnson deceased, the government asked specifically for judgment,

> . . . in the amount of $48,180.53, plus prejudgment interest from the date of notice and demand, March 11, 1971, to the date of judgment of $19,013.99, for a total of $67,194.52 with statutory interest on the total amount of $67,194.52 from and after the date of judgment entry.

On April 19, 1977, the trial judge entered an order which in part read:

> The motion of the defendant, United States of America, to amend the judgment entered herein on March 31, 1977, will be SUSTAINED insofar as granting judgment in its favor and against the plaintiffs; the motion of the United States will be OVERRULED as to the basis for prejudgment interest beyond interest calculated from date of notice and demand plus one year from the date of the filing of these actions.

Explaining its action, the court further ordered:

> The untimely delay in disposing of these cases was beyond the control of the parties and is attributable to an extensive backlog of civil matters. The record shows that plaintiffs have sought a timely trial on the issues and have not sought to delay or otherwise impair timely disposition. To permit the imposition of interest for a period of more than one year after the date of filing, under the pertaining circumstances, is contrary to the interests of justice and would, in fact, take on a punitive character. Counsel for both parties were advised prior to trial that such position would be taken by the Court regardless of which party prevailed.

Thereafter an amended judgment *nunc pro tunc* was entered by the court. As to the two actions involving "Central Quality," judgment was entered for $53,427.65 "for stipulated assessment" and "for prejudgment interest" of $10,142.98, making a total of $63,570.63. In the "Kentucky Esco" actions, judgment was entered for $48,180.53 "for stipulated assessment" and $9,163.80 "for prejudgment interest," making a total of $57,344.33. The trial judge thus limited prejudgment interest to $19,306.78 while the government claimed $40,079.90 (prejudgment interest computed from the date

of notices and demands [March 11, 1977] until date of judgment [March 31, 1977]).

The taxpayers have not appealed the judgments entered *nunc pro tunc* against them. The government appeals the court's reduction and remission of prejudgment interest from $40,079.90 to $19,306.78.

The United States thus states the issue on this appeal:

Whether the District Court erred in ruling that the Government could recover prejudgment interest for only a portion of the period between notice and demand for payment and judgment, rather than for the full period the penalty taxes here involved remained unpaid.

The taxpayers, appellees, state the issues differently:

1. Whether the District Court was correct, under the exercise of its equitable power, in limiting the amount of prejudgment interest payable in these cases.

2. Whether the United States, whose representative agreed to the limiting of interest when the District Court stated its position thereto, and who failed to appropriately raise objections even after entry of judgment, has waived its entitlement to prejudgment interest in excess of that amount allowed by the Court.

I.

The docket sheets of the four cases do not reflect that counsel for the plaintiff ever moved or took any other action to have the refund suits advanced or set for trial. It is, therefore, not clear what the trial judge is referring to when he states in his order:

The records show that plaintiffs have sought a timely trial on the issues and have not sought to delay or otherwise impair timely disposition.

Although not shown in the record, it will be assumed for purposes of this appeal that both the plaintiffs and the government sought "a timely trial on the issues"; and that "the untimely delay in disposing of these cases was beyond the control of the parties and is attributable to an extensive backlog of civil matters." Judicial notice is taken of the fact that the "extensive backlog of civil matters" has defied the persistent efforts of the judges of the Eastern District of Kentucky to reduce the size of that backlog.[3]

Notwithstanding any increased prejudgment interest which the court's delayed civil docket may cause these taxpayers to pay,[4] the question still remains whether this condition or any mitigating circumstances allows a trial court, exercising its equitable powers, to reduce or remit prejudgment interest.

Title 26, U.S.C. § 6601(a) and § 6601(e)(3)[5] provides compositely that in-

---

3. As of June 30, 1977, 3,370 civil cases were pending in Kentucky Eastern, 2,263 of which were Social Security appeals. In comparison, Kentucky Western had 1,420 civil cases pending, 222 of which were Social Security appeals.

4. As the government notes:

[T]axpayers here, as in any other case, might have protected themselves against the running of interest by setting aside an amount of money equivalent to the assessment in an interest-drawing savings account.

5. Section 6601. Interest on Underpayment, Non-payment, or Extentions of Time for Payment of Tax:

(a) [as amended by Sec. 7(a)(2), Act of January 3, 1975, P.L. 93–625, 88 Stat. 2108] *General Rule.*—If any amount of tax imposed

by this title (whether required to be shown on a return, or to be paid by stamp or by some other method) is not paid on or before the last date prescribed for payment, interest on such amount at an annual rate established under section 6621 shall be paid for the period from such last date to the date paid. Section 6601(e)(3), the subsection specifically applicable here, provides:

(e) [as redesignated by Sec. 7(b), Act of January 3, 1975, *supra* ] *Applicable Rules.* —Except as otherwise provided in this title—

(3) *Interest on penalties, additional amounts, or additions to the tax.*—Interest shall be imposed under subsection (a) in respect of any assessable penalty, additional amount, or addition to the tax only if such assessable penalty, additional amount, or ad-

terest on penalty taxes shall be imposed "at an annual rate established under section 6621" from the date of notice and demand until the date of judgment. Penalty taxes have been imposed under section 6672 on the plaintiffs as responsible corporate officers by the verdicts of the jury.

It is not disputed that the government served notices and demands upon each of the Johnson taxpayers with respect to each of the two corporations upon March 11, 1971. Hence, under section 6601(e)(3), "interest shall be imposed . . . from the date of the notice and demand to the date of payment."

■ However, the court, seeking to exercise its equitable powers, declared:

> To permit the imposition of interest for a period of more than one year after the date of filing, under the pertaining circumstances, is contrary to the interests of justice and would, in fact, take on a punitive character.

Prejudgment interest provided in section 6601 is not of a "punitive character"; it represents compensation for the value of holding money over a period of time as held in *United States v. Childs,* 266 U.S. 304, 309–10, 45 S.Ct. 110, 111, 69 L.Ed. 299 (1924):

> *Interest* is put upon it [the tax] and so denominated, distinguished from the 5% as penalty, *clearly intended to compensate the delay in payment of the tax* —the detriment of its nonpayment, to be continued during the time of its nonpayment—*compensation, not punishment.* [Emphasis added.]

To similar effect, *P. Lorillard Company v. United States,* 226 F.Supp. 694, 698 (S.D.N.Y.), *aff'd per curiam* 338 F.2d 499 (2nd Cir. 1964), states:

> The starting point [in applying section 6601] is the salutory principle, long established in the tax law, that interest is not a penalty but, rather, is intended to com-

pensate the government for the delay in payment of the tax. [Citations omitted.]

■ Without attempting to question the mandatory language of section 6601(e)(3) and without attempting to distinguish the cases cited by the government and here quoted, the plaintiffs-appellees argue that the district court,

> ". . . exercised its equitable power to fashion a measure of relief for ['the extreme backlog of civil cases' causing 'unconscionable delays in having civil cases brought to trial.']"

In justification, appellees say:

> It is well recognized that trial courts are vested with board discretionary powers to provide equitable relief in appropriate situations. See *Lemon v. Kurtzman,* 411 U.S. 192 (1973), at 200 [93 S.Ct. 1463, 36 L.Ed.2d 151].

*Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) (*Lemon* I) and *Lemon v. Kurtzman,* 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973) (*Lemon* II) are inapposite. In *Lemon* II the Supreme Court affirmed the district court's refusal to use its equitable powers to enjoin Pennsylvania's payment of $24,000,000 set aside to compensate nonpublic sectarian schools for a school year prior to the court's invalidation of the Pennsylvania law in *Lemon* I. Thus the district court refrained from using its equitable powers to retrospectively enforce an invalid law. In contrast, here the district court has used its equitable powers to deny enforcement of the mandatory provisions of section 6601(e)(3), an admittedly valid tax law.

In *Clark v. Barnard,* 108 U.S. 436, 457, 2 S.Ct. 878, 890, 27 L.Ed. 780 (1883), the Court made clear:

> Accordingly, where any penalty or forfeiture is imposed by statute upon the doing or omission of a certain act, there courts of equity will not interfere to mitigate the penalty or forfeiture, if incurred,

dition to the tax is not paid within 10 days from the date of notice and demand therefor, and in such case interest shall be imposed

only for the period from the date of the notice and demand to the date of payment.

for it would be in contravention of the direct expression of the legislative will.

In support, the Court cites an earlier case, *Powell v. Redfield,* Fed.Cas.No.11,359, 4 Blatchford, 45 and its holding:

> In *Powell v. Redfield* . . . an application was made in equity to restrain suits upon a bond given in pursuance of the revenue laws of the United States, which was denied on the ground that a court of equity had no right to interfere and, by injunction or decree, to virtually repeal the express provisions of a positive statute, or defeat their operation in the particular case.[6]

*Id.* 108 U.S. at 457, 2 S.Ct. at 890.

Thus, the district court's invocation of equity to alter and reduce the statutorily defined period for the accruing of prejudgment interest was beyond the court's equitable powers despite the even handed result sought by the court. It was plainly erroneous.

## II.

■ Plaintiffs-appellees further raise the issue: "Whether the United States, whose representative agreed with the District Court's Pre-Trial Determination to limit prejudgment interest, . . . has waived its entitlement to prejudgment interest in excess of the amount allowed by the Court." Plaintiffs-appellees contend:

> In a pre-trial conference between the Judge and counsel for all parties in these actions, the Judge determined, *sua sponte,* that prejudgment interest would

be limited to a period ending one year from the date the actions were filed, *regardless* of who prevailed on the merits. All counsel agreed, including counsel for the United States, that the limiting of prejudgment interest was appropriate in these cases.

The docket sheets in these cases show that an "informal pretrial" was held on 11/1/76, which was the day before the trial. The clerk's brief minutes of the pretrial conference make no mention of the matter of prejudgment interest, nor does it refer to any agreement between the parties.[7] Nor does the district judge in his order of April 19, 1977 make any reference to any agreement between the parties. The order shows that the court acted *sua sponte* :

> Counsel for both parties were advised prior to trial that such position would be taken by the court regardless of which party prevailed.

■ Thus the record does not disclose that at any time the government agreed to a limitation of prejudgment interest.

The record indicates to the contrary. On April 11, 1977, eight days before the entry of the court's order of April 19, 1977, the government moved to obtain the payment of all prejudgment interest. Notices of appeal from the court's order were timely filed by the government to the court's order. Thus, the record does not support appellees' claim of waiver. Nor does the record show any basis for appellees' claim of estoppel. The four requirements of estoppel, see *Hecht v. Harris, Upham & Co.,*

---

6. Relying on *Powell v. Redfield,* 27 Am.Jur.2nd, Equity § 85 at 607, states:

   For example, in the enforcement of the United States revenue acts, it may happen that hardship and injustice will at times be occasioned to those who inadvertently violate such statutory provisions and incur the penalties and forfeitures for which they provide. A court of equity has, nevertheless, no right to interfere and virtually to repeal the express provisions thereof by defeating the operation of such acts in a particular case.

7. The minutes cryptically state:

   The court had an informal pretrial conference with counsel with respect to defendant's motion and other matters and because of the unusual circumstances in the case, the consideration of those issues is passed without comment of counsel until 1:00 p. m. on Tuesday or until the taking of proof in this case is concluded.

430 F.2d 1202, 1208 (9th Cir. 1970) are not met.

The decision and order of the court below is reversed and remanded with instructions to enter judgment in favor of the United States, which includes the full statutory award of prejudgment interest.