Samuel R. PIERCE, Jr., Secretary of
Housing and Urban Development,
Plaintiff,

v.

APPLE VALLEY, INC., et al.,
Defendants.

No. C-2-81-741.

United States District Court,
S.D. Ohio, E.D.

Nov. 13, 1984.

Surell Brady, Mona S. Butler, Civil Div., Dept. of Justice, John P. Kennedy, Peter S. Race, Geoffrey L. Patton, Dept. of Housing and Urban Development, Washington, D.C., Albert R. Ritcher, Asst. U.S. Atty., Columbus, Ohio, for plaintiff.

Alan L. Briggs, Murphy, Young & Smith, Columbus, Ohio, Joseph J. Lyman, Lyman, Kyhus & Rales, Scott C. Whitney, Lyman, Kyhus & Rales, Washington, D.C., for defendants.

## OPINION AND ORDER

KINNEARY, District Judge.

This matter comes before the Court to consider the five motions to dismiss this action filed by two defendants, Apple Valley, Inc. and Robert G. Johnson, its President.

Plaintiff, the Secretary of Housing and Urban Development, filed this action against numerous defendants engaged in the construction and sale of real estate in Ohio. Plaintiff contends that the defendants violated the anti-fraud provisions of the Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701 *et seq.*, in the promotion and sale of certain properties collectively known as Apple Valley. In his Amended Complaint, plaintiff asserts two counts against the defendants. Count I alleges that the defendants made material misrepresentations in information pertinent to the sale of lots in violation of 15 U.S.C. § 1703(a)(1)(C); obtained money by means of false or misleading statements in violation of 15 U.S.C. § 1703(a)(2)(B); and engaged in practices that operate as a fraud or deceit upon purchasers in violation of 15 U.S.C. § 1703(a)(2)(C). Count II alleges that the defendants has failed to permit purchasers to exercise recission rights that are granted by the Act. 15 U.S.C. § 1703(b), (c), (e). Plaintiff asks for an injunction restraining defendants from violating the Act, and further asks this Court to exercise its equity powers to grant restitution of monies obtained by the defendants in violation of the Act.

The Interstate Land Sales Full Disclosure Act requires persons engaged in certain interstate sales of land to register the offering by filing a statement with the Department of Housing and Urban Development ("HUD"). 15 U.S.C. §§ 1704, 1705. In addition, sellers are required to furnish a property report to prospective purchasers containing information required by the Secretary of HUD. 15 U.S.C. § 1709(a). It is unlawful for any developer to sell any lot in a subdivision unless a statement of record has been filed with HUD. In addition, it is unlawful under the Act for any developer to defraud or deceive any purchaser, or to engage in practices that operate to defraud a purchaser. 15 U.S.C. § 1703(a). The Act grants certain rights to purchasers of lots in subdivisions to rescind the sale to them. 15 U.S.C. § 1703(b), (c).

In the instant case, defendants move to dismiss the complaint on a number of grounds. To a significant degree, these grounds overlap or build upon one another. For this reason, the Court will first consider defendants' motions to dismiss because the Secretary lacks standing to bring this action. Then, in Part II of this Opinion, the Court will consider defendants' motion to dismiss because the plaintiff lacks clean hands. And, in Part III, defendants' remaining three motions to dismiss will be considered.

## I.

The defendants submit that the Secretary of Housing and Urban Development lacks standing to bring this action under the Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701 *et seq.* Defendants point out that the Act expressly grants a right of action to enforce its anti-fraud

provisions only to a "purchaser or lessee" of a lot in a subdivision, 15 U.S.C. § 1709(a), but does not expressly provide that the Secretary may bring a civil action to enforce the anti-fraud provisions. Therefore, defendants contend, this Court should infer that Congress intended to preclude civil enforcement by the Secretary. Thus, they conclude, counts I(b), I(c) and II of the complaint should be dismissed.

■ Defendants' phrasing of the issue as one of standing is misleading. Questions of standing arise when a private party seeks to challenge official actions or legislation. The requirement that a litigant demonstrate concrete and particularized injury as a prerequisite to bringing suit to challenge official action is designed to narrow intrusion of the judiciary upon the political branches of the government. These concerns have no relevance when a public agency is bringing an action. Defendants' contentions must be construed to mean that the Act should be interpreted to deny the Secretary the authority to bring the instant action. This is, of course, a matter of legislative intent.

■ Defendants' argument that the Secretary lacks authority is without merit. The Act provides:

Whenever it shall appear to the Secretary that any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation of the provisions of this chapter, . . . . he may, in his discretion bring an action in any district court of the United States . . . to enjoin such acts or practices, and, upon a proper showing, a permanent or temporary injunction or restraining order shall be granted without bond.

15 U.S.C. § 1714(a). The plain language of this provision is that the Secretary can seek injunctive relief for *any* violation of the Act, including the anti-fraud provisions. When the language of the statute is unam-

biguous, there is no need to resort to the legislative history to construe it. *See e.g., United States v. Oregon,* 366 U.S. 643, 648, 81 S.Ct. 1278, 1280, 6 L.Ed.2d 575 (1961). Even if it were relevant, the sections of the legislative history cited by the defendants fall far short of the showing necessary to overcome the literal language of the statute itself.

■ Defendants' suggestion that § 1714(a) was intended only to apply injunctive actions by the Secretary concerning false statements contained in registration statements under 15 U.S.C. § 1704 and property reports under 15 U.S.C. § 1707 is unpersuasive. The Secretary will have by implication whatever authority is necessary to implement the purposes of the Act. As interpreted by the Courts, a central purpose of the Act is to ensure full disclosure to consumers of relevant facts prior to their decision to purchase a subdivision lot. *Law v. Royal Palm Beach Colony, Inc.,* 578 F.2d 98, 99 (5th Cir.1978). In addition, "(t)he general purpose" of the Act is "to prohibit and punish fraud" in the land sale industry. *McCown v. Heidler,* 527 F.2d 204, 207 (10th Cir.1975). The Act should be liberally construed to effectuate these remedial purposes.[1] *Id.* at 207. The dual purposes of full disclosure and prevention of fraud would be advanced by allowing the Secretary to bring civil actions to enforce the anti-fraud provisions. Since construing § 1714(a) restrictively would not advance the purposes Congress sought to achieve, this Court declines to do so. Although there appears to be no court decision directly on point, the Court has examined the decisions interpreting the Secretary's powers under the Act and finds no indication of restrictive interpretation. *Lynn v. Biderman,* 536 F.2d 820 (9th Cir.), *cert. denied* 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287 (1976); *Cumberland Capital Corp. v. Harris,* 490 F.Supp. 551, 559–560 (M.D.Tenn.1977).

1. Defendants assert that this matter is controlled by a general principle that a statute that creates a new cause of action and that expressly grants a right of action only to certain persons must be read narrowly. This ignores the reme-

dial nature of the Act. This Court has serious doubts that this asserted principle has any application to a remedial statute. Defendants cite no authority suggesting that it does.

Defendants' motion to dismiss counts I(b), I(c) and II of the complaint because the Secretary lacks to authority to bring this action is DENIED.

## II.

The defendants also contend that the complaint should be dismissed because the government's lack of clean hands bars it from seeking equitable relief. In general, defendants allege that the government has engaged in misconduct of various descriptions during its investigation preceding this litigation, during the administrative settlement process, and during the litigation itself. During the investigative phase, according to defendants, the plaintiff violated its own investigative regulations; violated the legal rights of the defendants; violated the Federal Reports Act, 44 U.S.C. § 3509; and colluded with a disgruntled former employee whom the defendants label a "known malcontent." Each of these instances of alleged misconduct is related to plaintiff's use of a questionnaire that was sent to purchasers of lots in Apple Valley. During the administrative phase, according to defendants, the plaintiff extorted a settlement which it subsequently violated, and intentionally misrepresented the results of its investigation in order to initiate litigation. Finally, during the civil litigation phase of this controversy, the plaintiff is alleged to have violated the Paperwork Reduction Act of 1980, 44 U.S.C. § 3507(a), and to have attempted to extort an unconscionable settlement by threatening to send out more questionnaires to purchasers of lots in Apple Valley.

■ If the complaint is to be dismissed because of unclean hands, the defendants must first show that the plaintiff engaged in acts or conduct that would amount to unclean hands if the plaintiff were an ordinary litigant. Unclean hands is an affirmative defense, and the burden is upon the party asserting it. Fed.R.Civ.P. 8(c); 2A Moore's *Federal Practice* ¶ 8.27(3). However, the government is not an ordinary

litigant. Consequently, even where the elements of the ordinary defense can be made out, it must further appear that the defense should be allowed against the government in the circumstances of the particular case. This second step presents a question of law for the Court.

■ As the doctrine is applied in ordinary litigation, unclean hands on the part of a plaintiff will bar equitable relief only if the plaintiff has engaged in bad faith or unconscionable conduct that relates to the subject matter of the action and is directed at the defendant. *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 244, 54 S.Ct. 146, 147, 78 L.Ed. 293 (1933); *New England Patriots Football Club, Inc. v. University of Colorado*, 592 F.2d 1196, 1199 (1st Cir.1979); *see generally* Wright and Miller, *Federal Practice and Procedure: Civil* § 2946. The conduct alleged to bar the action must relate to the "controversy in issue," *New England Patriots Football Club, Inc. v. University of Colorado, supra* at 1199, citing *Precision Instrument Mfg. Co. v. Automotive Maintenance Machine Co.*, 324 U.S. 806 at 815, 65 S.Ct. 993 at 997, 89 L.Ed. 1381 and must have an "immediate and necessary relation" to the equity that is asserted in the lawsuit. *Keystone Driller Co. v. General Excavator Co., supra,* 290 U.S. at 245, 54 S.Ct. at 147; *see also* Symons, *Pomeroy's Equity Jurisprudence* § 399 (5th ed. 1941). It is not sufficient that the complaint is actuated by motives of which a court may not approve. *Id.* at § 401.

■ Applying these principles to the instant case, the Court concludes that any misconduct by the government during the administrative or litigation stages of this controversy cannot bar it from equitable relief by virtue of unclean hands.[2] Such conduct lacks the required nexus with the equitable right that the government seeks to enforce. Rather than being related to the plaintiff's acquisition of the right he seeks to enforce, this alleged misconduct is

---

**2.** It is, of course, possible that the government could be barred from equitable relief if its con-

duct was outrageous. No such conduct appears in the instant case.

related to the process through which the plaintiff seeks to enforce its right. In addition, because the defendants have protections under the Equal Access to Justice Act, 5 U.S.C. § 504, and Federal Rules of Civil Procedure 16(f), 26(g) and 37 against unreasonable conduct by the government, there appears to be little reason to expand the unclean hands doctrine beyond its traditional limits.

The government's conduct in the investigative stage of this proceeding appears to the Court to stand on a different footing. Unlike the later administrative and litigation stages, possible misconduct by the government during the investigation appears to be sufficiently related to the government's acquisition of the right upon which it sues that the Court cannot conclude that it is beyond the scope of the unclean hands doctrine. Thus, the Court will assume, but does *not* at this point in this Opinion decide, that the government's conduct during the investigation. does amount to unclean hands. The Court will now decide whether the ordinary defense should be allowed against the government in the circumstances of this case.

There is some authority supporting the proposition that a government agency can be barred from maintaining an action by inequitable conduct prior to initiation of administrative action or litigation. These have been cases in which the government first encouraged a mistake and then took advantage of it in subsequent litigation. *See e.g., United States v. Fox Lake State Bank,* 366 F.2d 962 (7th Cir.1966); *Meister Bros., Inc. v. Macy,* 674 F.2d 1174 (7th Cir.1982); *United States v. Lazy FC Ranch,* 481 F.2d 985 (9th Cir.1973); *see generally* K. Davis, *Administrative Law Treatise* § 20.6 (2d ed. 1983), and *1982 Supplement,* §§ 17.03 and 17.04. In the instant. case, defendants do not contend that the government misled them and then took advantage of their mistake. Rather, they complain that the government treated them unfairly. Arguably, a government agency has a duty to treat those subject to its regulation fairly. *Investors Research v. Securities and Exchange Comm'n.,* 628

F.2d 168, 174 (D.C.Cir.), *cert. denied* 449 U.S. 919, 101 S.Ct. 317, 66 L.Ed.2d 146 (1980); *Gressley v. Califano,* 609 F.2d 1265, 1207–8 (7th Cir.1979). However, the Court's research has disclosed no cases directly on point to the defendant's contentions. Thus, the Court must survey the general law of equitable defenses against the government in order to decide defendants' contentions.

The starting point for analysis must be the most recent decision of the Supreme Court regarding estoppel of the government, *Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981). In *Hansen,* a claimant for Social Security benefits sought to estop the government on the basis of oral misrepresentations by a field representative that the claimant was not eligible for certain benefits. As a result, the claimant alleged, she did not file a written application and hence was precluded from receiving some retroactive benefits under Social Security regulations. *Id.* at 786, 101 S.Ct. at 1469. The claimant sought to estop the government from enforcing the regulations in light of the alleged oral misrepresentations.

The Court held that estoppel was inappropriate. The Court analyzed the problem by balancing the public interest that would be frustrated if the estoppel were allowed against the possible injustice if the estoppel were denied. With respect to the former, the Court reaffirmed "the duty of all courts to observe the conditions defined by Congress for charging the public treasury." *Id.* at 788, 101 S.Ct. at 1470, quoting *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380 at 385, 68 S.Ct. 1 at 3, 92 L.Ed. 10. With respect to the latter, the Court observed that the claimant had not been induced to take action that could not be corrected. *Id.* 450 U.S. at 789, 101 S.Ct. at 1471.

In *Hansen,* there was no dispute that the field representative had not followed the procedures set forth in the Claims Manual. The manual instructed field representatives to advise applicants of the advantages of

filing a written application. The Court held that this neglect "fell far short" of conduct that would raise a serious question of estopping the government from insisting upon enforcement of a valid regulation. *Id.* at 790, 101 S.Ct. at 1471, quoting *Montana v. Kennedy*, 366 U.S. at 314, 81 S.Ct. at 1340. The Court noted that it had never decided what type of conduct by a government employee would estop the government from insisting upon compliance with a valid regulation. *Id.* 450 U.S. at 788, 101 S.Ct. at 1470; *see also Montana v. Kennedy*, 366 U.S. 308, 314–315, 81 S.Ct. 1336, 1340–41, 6 L.Ed.2d 313 (1961) and *United States Immigration and Naturalization Service v. Hibi*, 414 U.S. 5, 8–9, 94 S.Ct. 19, 21–22, 38 L.Ed.2d 7 (1973). Thus, the Court's opinions leave open the possibility that some kind of affirmative misconduct might estop the government.

■ The Court in *Hansen* noted the existence of conflicting lines of authority regarding equitable defenses against the government. While it did not disapprove the other authority, it aligned itself with one of these approaches. *Id.* 450 U.S. at 788, 101 S.Ct. at 1470. Lacking any guidance from Sixth Circuit decisions,[3] this Court considers that this approved line of authority offers the best guidance regarding the law of equitable defenses against the government. This area of law is most fully developed in cases decided by the Ninth Circuit, one of whose cases was cited with approval by the Supreme Court in *Hansen*. This Court turns to consider the law as developed in Ninth Circuit decisions.

The rule has emerged in Ninth Circuit cases that the government can be estopped

only on the basis of affirmative misconduct. *Santiago v. Immigration and Naturalization Service*, 526 F.2d 488, 491 (9th Cir.1975), *cert. denied* 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976); *California Pacific Bank v. Small Business Admin.*, 557 F.2d 218, 224 (9th Cir.1977); *United States v. Ruby Co.*, 588 F.2d 697 (9th Cir.1978); *Vickars-Henry Corp. v. Bd. of Governors of the Federal Reserve System*, 629 F.2d 629, 635 (9th Cir.1980); *see also Sweeten v. United States Dept. of Agr. Forest Service*, 684 F.2d 679 (10th Cir.1982). As it has been developed in the cases, the "affirmative misconduct" limitation is two-pronged. *Hansen v. Harris*, 619 F.2d 942 (2d Cir.1980), *rev'd sub. nom. Schweiker v. Hansen*, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) (Friendly, J. dissenting).

■ The first prong—that estoppel against the government be based upon affirmative conduct—precludes estoppel based solely upon the negligence of government. *Simon v. Califano*, 593 F.2d 121, 123 (9th Cir.1979). In *Lavin v. Marsh*, 644 F.2d 1378 (9th Cir.1981), the Court refused to estop the government from enforcing a mandatory retirement regulation against an Army Reserve Officer. Even though its enforcement would deny him a military pension that he had re-enlisted to get, the Court held that "(a) mere failure to inform or assist does not justify application of equitable estoppel." *Id.* at 1384. And, in *California Pacific Bank v. Small Business Admin., supra*, at 225, the Court held that ambivalent actions on the part of an agency would not suffice to raise an estop-

---

**3.** Cases decided in this Circuit disclosed by the Court's research do not set forth general analysis that could be applied to the instant case. In *United States v. Am. Greetings Corp.*, 168 F.Supp. 45 (N.D.Oh.1958), *aff'd mem.* 272 F.2d 945 (1959), the district court declined to estop the government because of unreasonable delay, but did reduce the penalty imposed for violating a cease-and-desist order because of the delay. In *Interstate Fire Ins. Co. v. United States*, 215 F.Supp. 586 (E.D.Tenn.1963), *aff'd mem.* 339 F.2d 603 (6th Cir.1964), the district court allowed an estoppel against the Internal Revenue Service. Both decisions adopt a favorable atti-

tude toward estoppel of the government. However, in *United States v. Firestone Tire and Rubber Co.*, 374 F.Supp. 431 (N.D.Oh.1974), the Court held that equitable defenses may not be applied to the government so as to frustrate public policy, and suggested that equitable defenses were available only when the government was acting in a propriety capacity. *Id.* at 433. The two most recent cases in this Circuit— *Johnson v. United States*, 602 F.2d 734 (6th Cir. 1979) and *Federal Deposit Ins. Corp. v. Webb*, 464 F.Supp. 520 (E.D.Tenn.1978)—were decided on narrow, factual grounds.

pel. The Court noted that it would not draw inferences from silences and failures to respond.

It follows that, in deciding defendants' motion to dismiss because of unclean hands of the part of the plaintiff, the Court must disregard any claimed failures to investigate or to discover alleged facts or other omissions. These omissions cannot estop the government because they do not amount to affirmative conduct.

In addition, estoppel against the government must be based upon government "misconduct." In *U.S. v. Ruby Co., supra,* the Court held that the decision of the government not to resurvey in 1922 when it discovered that the original 1877 survey affecting title to certain lands was fraudulent did not estop the government from bringing an action to quiet title in its favor in these lands. The Court conceded that the government's decision not to resurvey amounted to affirmative conduct. However, it "did not amount to a misrepresentation, concealment or other form of *misconduct* necessary to support an estoppel against the government." *Id.* at 704, emphasis in original. The Court then raised the possibility that some broad principles of equity might nonetheless assist the aggrieved landowners in the case, even though they had failed to meet the requirement of affirmative misconduct. The Court wrote:

> (W)e have found no case which would allow the application of estoppel when there has been a failure of proof as to the required elements. Indeed, the equitable discretion seems to cut only in the other direction. That is, the court can refuse to apply the doctrine when equity-policy considerations so demand, even though the technical elements may be present.

*Id.* at 704. Noting that public lands are held in trust by the federal government for all the people, the Court continued:

> (E)ven if the landowners had proven all the elements necessary for estoppel, they would additionally need to demonstrate such equities which, on balance, out-

weigh those inherent equitable considerations which the government asserts as constitutional trustee on behalf of all the people.

*Id.* at 705. *See also* the seminal case of *United States v. Lazy FC Ranch,* 481 F.2d 985 (9th Cir.1973), which applies the same analysis.

Thus, a two-part analysis is necessary before a Court can conclude that the government engaged in "misconduct." First, the acts that are asserted to be the basis for the estoppel must amount to misrepresentation, fraud or active concealment. And second, the Court must balance the equities favoring the party asserting the estoppel against the impairment of public policy that would result if the estoppel were allowed. A number of factors are relevant to this balancing. One important consideration is whether the government is acting in a sovereign or proprietary capacity. *United States v. Lazy FC Ranch, supra,* at 989, n. 5 and *United States v. Georgia-Pacific Co.,* 421 F.2d 92 (9th Cir. 1970); *Meister Bros., Inc. v. Macy, supra,* at 1177. Although some courts do not allow equitable defenses against the government when it acts in a sovereign capacity, *see e.g., Organized Fishermen of Florida v. Andrus,* 488 F.Supp. 1351 (S.D. Fla.1980), this Court considers it preferable to weigh the public purpose that the government is serving against the possible injustice to private parties. Another consideration is the irreparability or avoidability of harm to the private interest of the party asserting the estoppel. *See California v. Small Business Admin., supra,* at 218; *Lavin v. Marsh, supra,* at 1384. Where the loss with which a private party is threatened can be averted other than by estopping the government, a court should not estop the government.

Thus, this Court concludes that if the government is to be estopped in this case, a number of requirements must be met. First, the government conduct complained of must amount to affirmative conduct, not omissions or failures to act. Second, the government conduct must amount to mis-

conduct, that is, fraudulent concealment, misrepresentation, or other bad faith conduct. Third, the government is seeking to enforce a statute in the instant case, which plainly is a sovereign function. Consequently, if the government is to be estopped from prosecuting this action, it must appear that it would be basically unfair to the defendants to permit the government to prosecute the suit.

■■■ Defendants contend that the plaintiff engaged in a variety of kinds of misconduct during his investigation of them. In substance, the facts underlying defendants' contentions are as follows. The Office of Interstate Land Sales Regulation (OILSR) of the Department of Housing and Urban Development had received three complaints by purchasers of lots in Apple Valley. OILSR's Chief of Enforcement decided to send a questionnaire to some 200 randomly selected purchasers of record of Apple Valley lots. A copy of this questionnaire has been provided to the Court. It asks a number of questions regarding the circumstances of the sale, sales methods, representations by salespersons, advertising materials and overall satisfaction with the purchase. A cover letter on stationery of the Enforcement Division of OILSR describes the purpose of the questionnaire as a "routine review" and states that Apple Valley has not been charged with any violation of the law. Information gathered from these questionnaires formed the basis for subsequent actions by OILSR. Defendants make a number of charges of impropriety in connection with this procedure.

First, defendants contend, OILSR made no attempt to determine that the initial three complaints were accurate or valid before it sent questionnaires to purchasers of Apple Valley lots. This failure to investigate, if true, would amount to carelessness; it does not amount to affirmative misconduct. *Compare Investors Research Corp. v. S.E.C.*, 628 F.2d 168, 174 (2d Cir. 1979), *cert. denied*, 449 U.S. 919, 101 S.Ct. 317, 66 L.Ed.2d 146 (1980).

■■■ Second, defendants contend that OILSR failed to follow its normal procedure of referring complaints to the developer in the first instance, denying them an opportunity to respond or take curative action. Failure to follow its own internal rules does not *per se* estop a government agency. *Schweiker v. Hansen, supra,* 450 U.S. at 789–790, 101 S.Ct. at 1470–71; *see also United States v. Caceres,* 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979). Further, failure to refer these complaints to the developer in the first instance does not amount to the kind of misconduct that is prerequisite to an estoppel against the government. In *TRW, Inc. v. F.T.C.,* 647 F.2d 942 (9th Cir.1981), the Court held that the failure of F.T.C. staff to notify the petitioner prior to the forwarding of a proposed complaint to the Commission, even though the staff had promised to do so, was not sufficient to estop the government. The Court noted that there was no indication that the petitioners had relied upon the staff's assurance in a way that had caused it substantial prejudice. *Id.* at 951. The Court further noted that even if the Commission had violated one of its rules in denying petitioners an opportunity for pre-complaint presentments, that violation would not estop the Commission from proceeding to a complaint, for there would be no prejudice in the required sense. *Id.* at 951. The instant case is an even weaker case for an estoppel, for plaintiffs allege only that OILSR did not follow its normal procedure.

■■■ Third, the defendants contend that the Secretary has failed to follow his own investigative regulations, leading defendants to characterize the investigation as illegal. These investigative regulations are contained in subpart C of part 1720; their scope is stated as follows:

(a) The rules in this subpart apply to and govern procedures for the conduct of formal inquiries and investigations undertaken by the Secretary.

(b) The Secretary may make inquiries and investigations to determine whether any person has violated or is about to violate any provision of the Act or the rules and regulations, or to aid in the

enforcement of the Act, or in prescribing rules and regulations thereunder, or in securing information to serve as a basis for recommending further legislation. 24 C.F.R. § 1720.45. The Court concludes from the contrast in language between subsection (a)—"formal investigation"—and subsection (b)—"inquiries and investigations"—that the regulations in subpart C were not intended to apply to all investigations. Rather, they are intended to apply only to investigations in which compulsory process will be issued and sworn testimony taken. This reading is consistent with the remainder of subpart C, which pertains to compulsory process and subpoenas. These regulations appear to be well within the authority conferred upon the Secretary under the Act. *See* 15 U.S.C. § 1714(b). Assuming *arguendo* that these investigative regulations did apply, it is doubtful that failure to comply with investigative regulations is a proper basis for estoppel. *See Schweiker v. Hansen, supra,* 450 U.S. at 790 n. 5, 101 S.Ct. at 1472 n. 5 referring to *United States v. Caceres, supra; see also Hansen v. Harris, supra,* at 956 (Friendly, J. dissenting).

Fourth, the defendants argue that the procedures followed by the government in this case violate their "basic legal rights." In *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), the Supreme Court held that compulsory process could issue in an investigation only where the government could show

> the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the (agency's) possession, and that the administrative steps required by [the law] have been followed
> . . .

*Id.* at 57–8, 85 S.Ct. at 254–55. *Powell* involved compulsory process that was issued to the target of the investigation, and to that extent is different from the present case in which questionnaires were sent to third parties. However, this Court is of the opinion that even targets of an informal investigation may enjoy *Powell*-type rights. Thus, the Court considers it appropriate to inquire whether defendants' rights were violated, and, if so, whether this violation estops the government.

█ It appears that the investigation in the instant case was conducted for a proper purpose. 15 U.S.C. § 1714(b) provides, in part:

> The Secretary may, in his discretion, make such investigations as he deems necessary to determine whether any person has violated or is about to violate any provision of this chapter ... and may require or permit any person to file with him a statement in writing, under oath or otherwise as the Secretary shall determine, as to all the facts and circumstances concerning the matter to be investigated. The Secretary is authorized, in his discretion, to publish information concerning any such violations, and to investigate any facts, conditions, practices, or matters which he may deem necessary or proper to aid in the enforcement of the provisions of this chapter ...

This language is sufficiently broad to encompass the sending of questionnaires to purchasers of lots in Apple Valley for the purpose of determining whether violations of the Act have occurred.

In *Lynn v. Biderman,* 536 F.2d 820 (9th Cir.1976), the Court held the Administrator of OILSR could not legitimately use customer lists obtained by subpoena to write to each of the customers informing them of their recission rights under the law. *Id.* at 826. This advice, the Court concluded, was not authorized by law. For two reasons, the Court concludes that *Biderman* does not support the conclusion that the government's purpose in the instant case is not legitimate. First, the questionnaire sent to purchasers of Apple Valley lots does not purport to give advice regarding recission rights. Even if it should have the incidental effect of inducing purchasers to learn about their legal rights, this effect would be subordinate to the legitimate purpose of collecting information. Second, in *Biderman,* the government sought to advance

its purpose by means of compulsory process. In the present case, cooperation with the questionnaire was voluntary.

Second, there can be no real question that the information sought by the government is relevant to the purpose of determining whether the Act has been violated. The Act confers broad authority upon the Secretary to collect information to aid in enforcement, to prescribe rules and to recommend legislation. *See* 15 U.S.C. § 1714(b). Third, the information sought was manifestly not within the Secretary's possession. And finally, the Court has already addressed the question whether the Secretary followed the administrative steps prescribed by law, and concluded that he has done so. Consequently, there appears to be no basis for concluding that defendants' *Powell*-type rights were violated. *A fortiori*, there is no basis for estopping the government.

Defendants argue, however, that the practices of the government did violate their rights. They draw an analogy between 15 U.S.C. § 1714(b) and section 21(a) of the Securities Exchange Act, 15 U.S.C. § 78u(a). Because the two statutes are highly similar, defendants submit that *Jerry T. O'Brien, Inc. v. Securities Exchange Comm'n,* 704 F.2d 1065 (9th Cir.1983), *reh. denied* 719 F.2d 300, *cert. granted* — U.S. ——, 104 S.Ct. 697, 79 L.Ed.2d 163 (1984) should be viewed as controlling in the present case. In *O'Brien,* the Ninth Circuit held that the target of an agency investigation enjoyed a right to notice of subpoenas served upon third parties in order that the target may move to quash these subpoenas to protect its rights under *United States v. Powell, supra.* Defendants state that they were not informed of the sending of questionnaires in the present case. By its terms, *O'Brien* is applicable only to formal investigations in which compulsory process is issued. Further, the opinion recognized that the Securities Exchange Commission could conduct preliminary or informal investigations prior to launching formal investigations. *Id.* at 1066, n. 1. Therefore, even if *O'Brien* is good authority, it is not dispositive of the present case.

Fifth, defendants argue that plaintiff violated the Federal Reports Act, 44 U.S.C. §§ 3501 *et seq.,* which provides in substance that an agency must not conduct the collection of information upon forms that have not been approved by the Director of the Bureau of the Budget. It is plain that this Act is concerned with the cost and efficiency of government paperwork, *see* 44 U.S.C. § 3501, and was not intended to create rights in persons in the position of the defendants. Defendants' argument that the government should be estopped from bringing this action because it violated the Federal Reports Act is frivolous.

It follows that none of the alleged instances of misconduct during the investigation of Apple Valley can, as a matter of law, serve as a basis for estopping the government by virtue of unclean hands. Further, none of the government's actions in the post-investigative stages of this proceeding amount to unclean hands. Therefore, defendants' motion to dismiss for unclean hands on the part of the plaintiff is DENIED.

### III.

Defendants have also filed what they style "# 5 Motion to Dismiss Plaintiff's Complaint"; they state that this is a motion under Federal Rule of Civil Procedure 12(b)(6). To a substantial extent, defendants reiterate points made in connection with their motion to dismiss for lack of standing.[4] The gravamen of defendants # 5 Motion is that the complaint is defective because it does not allege *scienter* or, in the alternative, that future violations may occur. According to the defendants,

---

**4.** Much of this argument is based upon an analogy between ILSFDA and the Securities Act of 1933. The analogy is flawed in that defendants falsely assume that there are no provisions in the 1933 Act expressly granting a cause of action. In fact, this is not so. Securities Act of 1933, § 12; 15 U.S.C. § 77*l.*

one or the other of these allegations is essential if plaintiff is to state a claim for injunctive relief. Hence, defendants conclude, the complaint must be dismissed.

■ Defendants' contention that *scienter* is required to state claim for injunctive relief is based upon an analogy to the securities acts. In *Aaron v. Securities Exchange Comm'n*, 446 U.S. 680, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980), the Supreme Court held that the Commission must prove *scienter* before an injunction may issue if *scienter* is an element of the substantive violation sought to be enjoined. But if *scienter* is not an element of the substantive violation, proof is not required. Whether *scienter* is an element of the substantive violation is determined primarily by the language of statute. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

Count I(a) of the Complaint is based upon 15 U.S.C. § 1703(a)(1)(C) which prohibits the sale or lease of a lot

> where any part of the statement of record or the property report contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein ...

Nothing in this language suggests that *scienter* is necessary to violate this section, and this Court so concludes.

Count I(b) of the Amended Complaint is based upon 15 U.S.C. § 1703(a)(2)(B) which makes it unlawful

> to obtain money or property by means of any untrue statement of a material fact, or any omission to state a material fact necessary to make the statements made ... not misleading, with respect to any information pertinent to the lot or subdivision ...

Again, the language of this section does not support the conclusion that *scienter* is necessary to a violation. *Compare Aaron v. Securities Exchange Comm'n., supra,* 446 U.S. at 696, 100 S.Ct. at 1955.

Finally, Count I(c) of the Amended Complaint is based upon 15 U.S.C. § 1703(a)(2)(C) which makes it unlawful

> to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a purchaser.

The emphasis is placed upon the effect of the prohibited act, not the intent or knowledge with which it is done. The Court concludes *scienter* is not required. *Compare Aaron v. Securities Exchange Comm'n, supra,* at 696–7, 100 S.Ct. at 1955–56; *Ackmann v. Merchants Mortgage & Trust Corp.,* 645 P.2d 7, 15–18 (Col.1982).

Alternatively, defendants contend that plaintiff has failed to allege that future violations may occur. This is false. *See e.g.,* Amended Complaint ¶ 13 ("will continue to ...").

■ Defendants also argue that plaintiff is not entitled to disgorgement of profits or recission as a remedy. The Court sees no reason why the unavilability of a particular remedy, provided it is not the only remedy sought, should lead to the dismissal of the complaint. As Section I of this Opinion concluded, plaintiff can seek injunctive relief. The propriety of further relief is not properly decided upon a motion to dismiss. Defendants' # 5 motion to dismiss is DENIED.

In their "# 3 Motion to Dismiss," defendants submit that Count I of the complaint must be dismissed because it sounds in fraud and is not pled with the particularity required by Federal Rule of Civil Procedure 9(b). The rule requires: "In all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity." Plaintiff denies that the complaint sounds in fraud and asserts that, even if it does sound in fraud, the complaint is sufficiently particular. The Court need not decide whether the complaint sounds in fraud, for, even if Rule 9(b) applies, the Court considers Count I of the complaint to be sufficiently particular.

■ Normally, Rule 9(b) requires that the pleader set forth the time, place and content of the false representations and state what was obtained as a conse-

quence of the fraud. 2A Moore's *Federal Practice* ¶ 9.03. There is no dispute that the complaint details the false representations and states their content. *See* Amended Complaint ¶ 13. It is true that a time and place is not stated for each alleged misrepresentation. However, in the circumstances of this case, where numerous defendants are alleged to have made the alleged misrepresentations, it would be impractical to require plaintiff to recount the time and place of each misrepresentation. The requirement of particularity of Rule 9(b) must be harmonized with Rule 8, which provides that pleadings should contain "a short and plain statement of the claim ..."

 Finally, in what is styled "# 1 Motion to Dismiss," defendants move to dismiss Count I(a) of the complaint for failure to state a claim upon which relief can be granted. In Count I(a), plaintiff alleges that the defendants have obtained money on or about and since October, 1978 by means of material misrepresentations with respect to information included in the statement of record or the property report or other information pertinent to lots in Apple Valley. Amended Complaint, ¶ 13(a). The Act provides, in pertinent part:

It shall be unlawful for any developer or agent ... to obtain money or property by means of any untrue statement of a material fact, or any omission to state a material fact necessary in order to make the statements made (in light of the circumstances in which they were made and within the context of the overall offer and sale or lease) not misleading, with respect to any information pertinent to the lot or subdivision ...

15 U.S.C. § 1703(a)(2)(B). Plainly, the allegation of Count I(a) tracks the statutory language. Defendants' motion to dismiss for failure to state a claim must, therefore, be DENIED.

**WHEREUPON,** upon consideration and being duly advised, this Court determines that the various motions of defendants Apple Valley, Inc. and Robert G. Johnson are without merit and, therefore, are DENIED.

**IT IS SO ORDERED.**